George C. GILMORE, Appellee,

v.

Bill ARMONTROUT, Appellant.

George C. GILMORE, Appellant,

v.

Bill ARMONTROUT, Appellee.

Nos. 88–1378, 88–1517.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1988.
Decided Nov. 10, 1988.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellant.

Kevin L. Collins, Kansas City, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

The State of Missouri appeals and petitioner George C. Gilmore cross-appeals from the district court's order granting Gilmore's 28 U.S.C. § 2254 petition for writ of habeas corpus upon the basis of two of the nine grounds set forth therein, and ordering a new trial in the punishment phase of Gilmore's state capital murder trial, or in the alternative, alleviation of the death sentence imposed. For reasons to be stated, we conclude that Gilmore's challenges to his conviction and sentence do not warrant habeas corpus relief. Accordingly, we reverse the district court's order and reinstate the original sentence.

## I.

Gilmore is a state prisoner currently incarcerated at the Missouri State Penitentiary in Jefferson City, Missouri. In March, 1982 he was convicted by jury of capital murder and sentenced to death in connection with the slaying of an elderly woman, Mary Luella Watters.[1] Gilmore's conviction and sentence were affirmed by the Missouri Supreme Court on direct appeal. *State v. Gilmore*, 661 S.W.2d 519 (Mo.1983) (en banc), *cert. denied*, 466 U.S. 945, 104

---

1. The facts surrounding Mrs. Watters's murder are set forth in detail in *State v. Gilmore*, 661 S.W.2d 519 (Mo.1983) (en banc), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ld.2d 476 (1984). Gilmore has been convicted of capital murder and sentenced to death in two other similar cases. *See State v. Gilmore*, 681 S.W.2d 934 (Mo.1984) (en banc); *State v. Gilmore*, 697 S.W.2d 172 (Mo.1985) (en banc), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).

S.Ct. 1931, 80 L.Ed.2d 476 (1984). Gilmore then filed a motion for state post-conviction relief pursuant to Missouri Supreme Court Rule 27.26,[2] which was denied after an evidentiary hearing. The denial of the motion was affirmed by the Missouri Court of Appeals. *Gilmore v. State,* 712 S.W.2d 438 (Mo.Ct.App.1986).

Thereafter, Gilmore commenced the present action for federal habeas corpus relief. In an amended petition filed June 1, 1987, after the appointment of counsel, Gilmore advanced the claims that: (1) his conviction was obtained in violation of the sixth amendment because he was not represented by counsel at his arraignment and plea; (2) he was forced to wear leg irons in the presence of the jury, in violation of the fifth amendment; (3) his trial attorney rendered ineffective assistance;[3] (4) the state trial court's action of unilaterally striking a juror denied Gilmore a trial by a jury chosen from a cross-section of the population, in violation of the sixth amendment; (5) the prosecuting attorney made improper remarks during his closing argument in the punishment phase of the trial;[4] (6) during the punishment phase of the trial, the jury was improperly permitted to view Gilmore's videotaped confession in two un-

related crimes; (7) the imposition of the death penalty constitutes cruel and unusual punishment, in violation of the eighth amendment; and (8) the imposition of the death penalty is arbitrary and excessive, and disproportionate to the sentence imposed in other similar cases. Finally, in a second amended petition filed July 23, 1987, Gilmore advanced the additional claim that during the guilt phase of the trial, the jury was improperly permitted to consider evidence concerning the impact of the crime upon the victim's relatives.

After supplemental briefing by both parties,[5] the district court entered an order dated February 26, 1988, directing that Gilmore be given a new trial in the penalty phase of the proceedings or, in the event that the State elected not to give Gilmore a new trial, that he be relieved of the sentence of death and confined for fifty years without parole. *Gilmore v. Armontrout,* 681 F.Supp. 632, 641 (W.D.Mo.1988).

The district court concluded that the challenged portion of the prosecuting attorney's closing statement was improper and "blatantly prejudicial," depriving Gilmore of a fair trial. The court determined that its consideration of this claim was not pre-

---

2. Rule 27.26 was repealed, effective January 1, 1988. Post-conviction relief in Missouri is now available under Missouri Supreme Court Rule 29.15.

3. In both of his amended petitions, Gilmore contends that his trial attorney was ineffective in failing to move for leave to enter a plea of not guilty by reason of mental disease or defect until seven months after counsel's appointment, and by failing to present evidence in support of the motion. The district court did not explicitly rule upon these grounds of alleged ineffectiveness, but instead considered Gilmore's claim of ineffective assistance in conjunction with his claim challenging the prosecuting attorney's closing argument in the punishment phase of the trial. Neither party has challenged the district court's action in this regard, and Gilmore has abandoned his original grounds of alleged ineffectiveness.

4. Specifically, Gilmore challenges the following emphasized portion of the prosecuting attorney's closing argument:

> If you put this man in the penitentiary for a period of fifty years without probation—or without parole, you haven't punished him. He's been to the penitentiary before. In fact,

he escaped from it. *And also you have absolutely no guarantee that the legislature down the road, here, won't change its mind, that they won't pass another law saying that you can let someone who's been convicted like this defendant out of jail before the fifty years are up, or the governor could commute his sentence.* That sort of punishment is no deterrent, especially to men like this who know what the penitentiary is, who know what it's like living in there.

5. In an order dated December 11, 1987, the district court directed both parties to file briefs concerning the propriety of the remarks made in the prosecuting attorney's closing argument during the punishment phase of the trial; the possibility of a state bar precluding review because Gilmore did not raise this issue on appeal from the denial of his Rule 27.26 motion; and whether this issue was properly presented in Gilmore's habeas corpus petition despite the fact that it was not appealed in state court and that no objection was made at the trial level. The State had raised the issue of a procedural bar to a number of Gilmore's claims in its response to the district court's order to show cause why a writ of habeas corpus should not be granted.

cluded despite Gilmore's attorney's failure to object at trial because the prosecutor's statements constituted plain error under Missouri Supreme Court Rule 30.20 and Gilmore's attorney's failure to object was "so grossly negligent that it falls completely outside the standards of *Wainwright v. Sykes* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977)]...." 681 F.Supp. at 637. Similarly, although acknowledging that Gilmore presented the claim in his Rule 27.26 motion but did not include it on appeal from the denial thereof, the court concluded that the claim had been exhausted and was not subject to a state procedural default barring review because Gilmore no longer had an available state remedy, and should not be held to the *Wainwright* standard as a result of his attorney's failure to advance the claim on appeal from the denial of the Rule 27.26 motion, or the trial court's failure to prohibit the argument sua sponte. Using the same analysis, the court determined that Gilmore's claim concerning the jury's allegedly improper consideration of evidence of the impact of the crime upon the victim's relatives was not procedurally barred. The court then concluded that this claim stated a basis for relief pursuant to the principles enunciated in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). 681 F.Supp. at 641. The court dismissed Gilmore's remaining claims on the merits, and both parties appealed.

For reversal, the State of Missouri argues that the district court erred in granting Gilmore's petition because the claim concerning the prosecuting attorney's closing argument is subject to a procedural default barring review and does not rise to the level of a constitutional violation. Similarly, the State contends that Gilmore's claim concerning the allegedly improper admission of evidence is barred by Gilmore's default, does not rise to the level of a constitutional violation, and in any event constitutes harmless error. In his cross-ap-

peal, Gilmore argues that the district court erred in dismissing his claims that his sixth amendment rights were violated because he did not have counsel at arraignment; his fifth amendment rights were violated when he was forced to wear leg irons during the trial; the trial court's dismissal of a prospective juror resulted in the violation of his sixth amendment rights; and that during the sentencing phase, the jury was improperly permitted to view his videotaped confession to two unrelated crimes. We consider each of these arguments in turn.

## II.

### A. *Prosecuting Attorney's Closing Argument in Punishment Phase.*

■ As indicated, the State first contends that the district court erred in granting Gilmore habeas corpus relief upon the basis of his claim concerning the prosecuting attorney's closing argument because the claim is barred by a procedural default and does not rise to the level of a constitutional violation. A brief discussion of the procedural history of Gilmore's claim must precede our consideration of the State's contention that the claim suffers from a procedural default barring federal review.

As noted by the district court, despite the applicability of Missouri's contemporaneous objection rule, *see State v. Hayes*, 624 S.W. 2d 16, 20 (Mo.1981), Gilmore's trial attorney did not object to the prosecutor's closing argument, nor did he raise the issue of the propriety of the closing argument on direct appeal.[6] In his Rule 27.26 motion Gilmore did present the claims that the prosecutor's closing argument was impermissible under *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and that his trial attorney rendered ineffective assistance in failing to lodge an objection.[7] Neither of these claims, how-

---

6. Gilmore's trial counsel also represented him on direct appeal. Different attorneys were appointed in conjunction with both Gilmore's Rule 27.26 motion and the appeal from the denial thereof.

7. The Rule 27.26 trial court rejected these claims on the merits.

ever, was advanced on appeal from the denial of the motion.[8]

Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules. *See Engle v. Isaac,* 456 U.S. 107, 125, 135, 102 S.Ct. 1558, 1570, 1575, 71 L.Ed.2d 783 (1982). This requirement implicates consideration of both the question whether the petitioner has exhausted all remedies available in the courts of the state at the time the federal habeas corpus petition is filed, *see Humphrey v. Cady,* 405 U.S. 504, 516, 92 S.Ct. 1048, 1055, 31 L.Ed.2d 394 (1972), and whether he has preserved his claims for federal habeas corpus review by complying with state procedural rules governing their presentation. *Engle v. Isaac,* 456 U.S. at 125, 126 n. 28, 102 S.Ct. at 1570, 1571 n. 28.

In the instant case, the State does not contest the district court's conclusion that Gilmore has exhausted available state remedies with respect to his claim concerning the propriety of the prosecutor's closing argument. *See Gilmore v. Armontrout,* 681 F.Supp. at 637 ("Because [Gilmore] no longer has any remedy available to exhaust this claim, the requirement of exhaustion should not be applied inflexibly to bar this Court's consideration of [the] claim."). This court has previously observed that Missouri courts strictly construe the provision in Missouri Supreme Court Rule 27.26 that a successive motion to vacate a sentence shall not be entertained when the grounds presented therein could have been raised in the original Rule 27.26 motion. *Lindner v. Wyrick,* 644 F.2d 724, 726–27 (8th Cir.), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981). Because Gilmore advanced his claim concerning the prosecuting attorney's closing argument in his original Rule 27.26 motion, the record clearly indicates that the claim was available to him when the motion was filed. In these circumstances, we agree with the district court that the filing of a successive Rule 27.26 motion advancing this claim would be futile, and that Gilmore has exhausted state remedies with respect to this claim. Employing this same rationale, we also conclude that Gilmore has exhausted state remedies with regard to his claim that his trial attorney rendered ineffective assistance by failing to object to the prosecutor's closing argument.

Gilmore did not comply with Missouri procedural rules, however, when he failed to advance these claims on appeal from the denial of his Rule 27.26 motion.[9] *See Stokes v. Armontrout,* 851 F.2d 1085, 1092 (8th Cir.1988) (Missouri petitioner's failure to raise claim on appeal from the denial of his state post-conviction motion erected a procedural bar to federal habeas review); *see also Benson v. State,* 611 S.W.2d 538, 541 (Mo.Ct.App.1980) (Missouri procedure requires presentation of a claim "at each step of the judicial process" in order to avoid default). Hence, federal habeas review of these claims is precluded unless Gilmore can demonstrate cause for his default and actual prejudice resulting from

---

**8.** Although the district court determined that Gilmore's ineffective assistance claim was adequately raised in the state post-conviction appeal, *see Gilmore v. Armontrout,* 681 F.Supp. at 637, our review of the record leads us to a contrary conclusion. The sole ground in support of Gilmore's claim of ineffectiveness advanced in the state post-conviction appeal was that trial counsel failed to pursue the benefit of testimony of certain potential alibi witnesses. We do not think the nature of this claim is sufficiently similar to the alleged basis of ineffective assistance currently at issue to permit a conclusion that the latter claim was adequately presented in the state post-conviction appellate proceeding. *See Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) (in order for a claim to have been adequately presented to a state court for procedural purposes in a habeas proceeding, the same facts and legal theories in support of the claim must be advanced in both state and federal court).

**9.** Because Gilmore's failure to raise these claims on appeal from the denial of his Rule 27.26 motion erects an adequate and independent procedural bar, the fact that the Rule 27.26 trial court considered the merits of the claim concerning the prosecutor's closing argument and overlooked the initial default stemming from Gilmore's failure to object at trial or to raise the claim on direct appeal does not render *Wainwright* inapplicable. *Cf. Euell v. Wyrick,* 675 F.2d 1007, 1008–10 (8th Cir.1982).

the alleged constitutional violation. *Wainwright v. Sykes*, 433 U.S. at 84, 97 S.Ct. at 2505.

The district court declined to undertake the cause and prejudice analysis in light of its determination that *Wainwright* was inapplicable. With due respect, we find the district court's reasoning in this regard contrary to existing Supreme Court precedent. In particular, we note that in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986), the Court indicated that the cause and prejudice showing must be made in order to surmount a procedural default except "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *See also Engle v. Isaac*, 456 U.S. at 135, 102 S.Ct. at 1576 (in appropriate cases, the requirement of a showing of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration"). To date, no extraordinary case of this nature has been found, 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4266.1 (1988), nor does Gilmore urge that this is such a case. In addition, in *Engle v. Isaac*, the Supreme Court explicitly declined to adopt a plain error inquiry in federal habeas review of state convictions, reasoning, "[w]e remain convinced that the burden of justifying federal habeas relief for state prisoners is 'greater than the showing required to establish plain error on direct appeal.'" 456 U.S. at 134–35, 102 S.Ct. at 1575 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)). Finally, in *Smith v. Murray*, 477 U.S. 527, 538, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986), the Court rejected any "suggestion that the principles of *Wainwright v. Sykes* apply differently depending on the nature of the penalty a State imposes for the violation of its criminal laws."

Turning now to a determination of whether Gilmore has met his burden of demonstrating cause and prejudice, we conclude after a careful review of the record that nothing therein purports to suggest a cause for Gilmore's failure to present, on appeal from the denial of his Rule 27.26 motion, either of the claims at issue.[10] Although Gilmore argues that the alleged ineffective assistance of the attorney representing him at trial and on direct appeal constitutes cause, we reiterate our earlier conclusion that Gilmore's failure to advance the claims in question in his post-conviction appeal functions as an adequate and independent procedural default.

■ Although our inquiry need continue no further, we note that Gilmore's underlying claims are without merit. Gilmore's reliance upon *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in support of his assertion that the prosecutor's remarks warrant habeas relief, is misplaced. *Caldwell* condemns state-induced comments that "mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Darden v. Wainwright*, 477 U.S. 168, 184 n. 15, 106 S.Ct. 2464, 2473 n. 15, 91 L.Ed.2d 144 (1986).[11] The comments in the case at hand, *supra* n. 4, did not mislead the jury; rather, they accurately apprised it of the potential consequences of its sentencing alternatives. Moreover, the comments in no way tended to diminish the jury's role in the sentencing determination; on the contrary, a fair reading of the prosecutor's closing argument leads one to conclude that the remarks at issue underscored the importance of the jury's decision.

Furthermore, in *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), the Supreme Court held that a California law which required a trial judge

---

**10.** Gilmore does not suggest that his post-conviction appellate attorney's ineffective assistance constitutes cause for the failure to present these claims in the post-conviction appeal. Nevertheless, we note that Gilmore could not ultimately prevail on such a claim because of our determi-

nation that the underlying claim concerning the prosecutor's closing argument is without merit.

**11.** In *Caldwell*, the prosecuting attorney sought to minimize the importance of the jury's decision by telling the jury that the sentence it imposed would be subject to appellate review.

to inform the jury that a sentence to life imprisonment without parole may be commuted to a sentence including the possibility of parole, when given in the penalty phase of a capital murder trial, did not violate the eighth and fourteenth amendments. *Id.* at 1013, 103 S.Ct. at 3459. In so holding, the Court expressly rejected the arguments that such an instruction invited an unacceptable level of speculation and unreliability, that the instruction deflected the jury from its task of basing its sentencing decision upon the specific facts of the case, and that the instruction misled the jury by failing to inform it that a sentence of death may also be commuted. *Id.* at 1001–1012, 103 S.Ct. at 3453–3459. Although we recognize that *Ramos* concerned the constitutionality of a state statute, and we are aware of the Supreme Court's statement in *Ramos* that states remain free to prohibit a capital sentencing jury from considering the governor's power to commute, *id.* at 1013, 103 S.Ct. at 3459, we believe the Court's conclusion that the commutation instruction did not violate the federal Constitution is apropos and instructive in this federal habeas corpus proceeding.[12]

Finally, an important component of the Court's decision in *Caldwell* was the fact that the trial judge "not only failed to correct the prosecutor's remarks, but in fact openly agreed with them; he stated to the jury that the remarks were proper and necessary, strongly implying that the prosecutor's portrayal of the jury's role was correct." *Caldwell,* 472 U.S. at 339, 105 S.Ct. at 2644. By contrast here, the trial court submitted an instruction informing the jury that the arguments of counsel are not evidence, thus reducing any likelihood that the jury was substantially influenced by counsel's comments. While we make no comment as to whether the submission of such an instruction would have been sufficiently curative if a *Caldwell* violation had in fact occurred, we believe the instruction underscores our conclusion that no impropriety was committed in the matter *sub judice.*

In light of the foregoing, it is clear that Gilmore's ineffective assistance claim lacks merit. Gilmore has not established either that his trial attorney's failure to object or to raise the issue on direct appeal "fell below an objective standard of reasonableness," nor has he demonstrated a reasonable probability that but for counsel's alleged error "the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984).

### B. Victim-impact Evidence.

The State next challenges the district court's conclusion that the admission of victim-impact evidence [13] violated Gilmore's

12. Parenthetically, we note that the Missouri legislature does not prohibit capital sentencing juries from considering the governor's power to commute a sentence, nor do we believe that Missouri case law prohibits a capital sentencing jury from considering either this power or the power of the state legislature to modify parole statutes. *See State v. Newlon,* 627 S.W.2d 606, 618–19 (Mo.) (en banc) (rejecting various claims challenging the prosecuting attorney's closing argument, which included statements that a sentence to a term of years could be commuted or modified by the legislature to permit parole), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Antwine,* 743 S.W. 2d 51, 71 (Mo.1987) (en banc) (recognizing that the jury in the punishment phase of a death penalty case may consider evidence and argument inadmissible in the guilt phase, including argument concerning the need to impose the death penalty in order to prevent the defendant from committing future crimes), *cert. denied,*

— U.S. ——, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

13. Specifically, Gilmore challenges the following statements made during the guilt-phase examination of Audrey Watters, Mary Luella Watters's daughter-in-law: Audrey Watters's statement that her husband (Mary Luella Watters's son) collapsed the day before the trial and had been bereaved since the date of the crime (Tr. 354); the prosecutor's question as to how Mary Luella Watters occupied herself, which was objected to, and the objection sustained, before Audrey Watters answered (Tr. 357); the prosecutor's question concerning Mary Luella Watters's spirits, which was objected to, and the objection sustained, before the witness's answer (Tr. 357); and the prosecutor's question whether Mary Luella Watters was able to take care of herself, to which Audrey Watters answered, "Yes, she was very independent and she was wiry," before defense counsel objected on the

eighth amendment rights as established by the Supreme Court's decision in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). As a preliminary matter, the State contends that (1) Gilmore has waived his *Booth* claim by failing to address, in his traverse, the State's argument that the claim is procedurally barred; and (2) Gilmore committed certain state procedural defaults which erect an adequate and independent bar to consideration of the *Booth* claim.

■ The State correctly observes that pursuant to 28 U.S.C. § 2248, "[t]he allegations ... of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." Gilmore did not respond to the State's procedural default argument in his traverse, nor did he allege in his habeas petition that his *Booth* claim was not procedurally barred. Nevertheless, because it is apparent that the State's waiver argument was not presented to, nor considered by, the district court, we believe it improvident to conclude that the State's contentions must be accepted as true.

■ Moreover, a review of the record discloses that Gilmore may not have defaulted with respect to all of the transcript references cited in support of his *Booth* claim. Gilmore objected to the questions propounded at page 357 of the transcript on the grounds of relevancy and prejudice,[14] and requested that the questions be stricken or that a mistrial be declared. Furthermore, Gilmore advanced a claim on direct appeal challenging these questions. Thus, we are reluctant to say that default has occurred. Gilmore did, however, clearly default with respect to the testimony on pages 354 and 361 of the transcript. He did not object to the testimony on either of these pages on the grounds of relevancy or prejudice; rather, the stated bases for his objections were merely that the witness's answers were nonresponsive. Missouri law requires that during trial the complaining party make a specific objection upon the grounds advanced on appeal. *See Lawson v. Cooper*, 475 S.W.2d 442, 447 (Mo.Ct.App. 1972). Furthermore, on direct appeal, Gilmore did not raise a claim challenging the testimony on page 354 of the transcript, nor did he request additional relief after his objections to the testimony on both pages were sustained. Under Missouri procedure, "where, as here, a litigant objects to a trial event, invokes specific relief and is granted the full request, he cannot complain that the trial court did not do more." *State v. Johnson*, 663 S.W.2d 265, 266 (Mo. Ct.App.1983).

■ In summary, then, we will review the merits of Gilmore's claim challenging the questions propounded on page 357 of the transcript. Since Gilmore clearly has not demonstrated cause [15] for his procedural default with respect to the other transcript references, nor has he shown prejudice as defined under *Wainwright*, our consideration of these items is procedurally barred.

ground that the answer was conclusory and nonresponsive (Tr. 361).

**14.** In *Booth,* decided several years after Gilmore's trial and direct appeal, the Supreme Court held that the introduction, during the sentencing phase, of a victim-impact statement containing information about the victim's character and the impact of the crime upon the victim's relatives, violated the eighth amendment because it tended to "inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Booth v. Maryland,* 107 S.Ct. at 2536. We believe that Gilmore's objections on the grounds of relevancy and prejudice may have sufficed to state a claim under *Booth.*

**15.** Gilmore has not alleged, nor would we accept an argument, that his failure to object to the testimony on pages 354 and 361 of the transcript on *Booth* -type grounds is excused by the fact that *Booth* postdated his trial. His other objections on relevancy and prejudice grounds themselves evidence that *Booth* did not concern a sufficiently novel issue to excuse a procedural default. Furthermore, *Booth* merely reaffirmed the principle that the eighth amendment demands sentencing decisions in a capital case to be focused upon the character of the defendant and the particular circumstances of the crime. *See Booth,* 107 S.Ct. at 2532; *see also Thompson v. Lynaugh,* 821 F.2d 1080, 1082 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987).

On the merits, we conclude that a considerable extension of *Booth* would be required to render the challenged transcript references to be considered in the case at hand violative of the *Booth* decision. In *Booth*, the Supreme Court invalidated a Maryland statute which required a capital sentencer to consider information contained in a victim-impact statement (VIS) prepared by the Maryland State Director of Parole and Probation. The VIS in *Booth* described the personal characteristics of the victims, an elderly couple; contained a detailed recitation of the emotional impact of the crime upon the victims' family members; and set forth the family members' opinions as to the crime and the characteristics of the defendants. The Supreme Court held that such information is irrelevant to the capital sentencing decision and creates a constitutionally impermissible risk that the jury may impose a sentence of death in an arbitrary and capricious manner. *Booth*, 107 S.Ct. at 2533.

The transcript references in the present case are not of the same nature as the evidence condemned in *Booth*. Here, the prosecutor asked Audrey Watters how Mary Luella Watters occupied herself and what her spirits were like. Both questions were objected to before the witness's answers. One need only peruse the VIS appended to the *Booth* decision to appreciate the qualitative difference of the evidence presented in that case and its indelible impact upon a jury. The same risk of inflaming the jury and diverting it from its responsibility of making a sentencing determination based upon the individual characteristics of the defendant and the particular circumstances of the crime did not exist in the present case. Accordingly, we conclude that the district court erred in holding that Gilmore is entitled to habeas corpus relief upon the basis of his *Booth* claim.

### C. Failure to Provide Counsel at Arraignment.

Cross-appealing, Gilmore first argues that the district court erred in rejecting his claim that the failure to provide counsel at arraignment renders his conviction violative of the sixth amendment.[16] Gilmore alleges that without the presence or advice of counsel, he entered a plea of not guilty at his August 11, 1981 arraignment. It is undisputed that Gilmore had not waived the presence of counsel. Counsel was not appointed until fifteen days later.[17] In March of 1982, when Gilmore's appointed attorney attempted to assert a defense of mental disease or defect pursuant to Mo.Rev.Stat. § 552.030, the State objected on the ground that the defense was barred by the ten-day limitation provided in Mo.Rev.Stat. § 552.030(2).[18] The trial court disallowed formal assertion of the defense. Gilmore contends that the absence of counsel at arraignment and his subsequent inability to assert a Chapter 552 defense resulted in a violation of his sixth amendment rights.

The sixth amendment right to counsel applies to those "critical stages" of a crimi-

---

**16.** As a preliminary matter, we agree with the district court's determination that this claim was adequately presented to the Missouri Supreme Court on direct appeal, and that, therefore, no procedural default has occurred. In its opinion, the Missouri Supreme Court stated that Gilmore's brief on appeal contained an allegation that the trial court erred in "failing to appoint counsel within time to allow raising of defense of mental disease or defect." *State v. Gilmore*, 661 S.W.2d at 521. Although the court focused upon whether the trial court abused its discretion in refusing to permit Gilmore to assert a Chapter 552 defense, we believe Gilmore adequately presented the constitutional aspects of his claim by making a "discernible reference to a federal constitutional right." *Graham v. Solem*, 728 F.2d 1533, 1535–36 (8th Cir.) (en

banc), *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).

**17.** Although an attorney was appointed seven days after Gilmore's arraignment, this attorney requested and was granted leave to withdraw.

**18.** Mo.Rev.Stat. § 552.030(2) provides:
Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the accused unless the accused, at the time of entering his plea to the charge, pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty, or at such later date as the court may for good cause permit, he files a written notice of his purpose to rely on such defense.

nal prosecution "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). Hence, the sixth amendment has been held applicable to certain pretrial proceedings including interrogation activities conducted "at or after the initiation of adversary criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment," *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), and to that type of arraignment or preliminary hearing itself at which rights of the accused may be lost or sacrificed. *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961); *see also Coleman v. Alabama*, 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed. 2d 387 (1970).

Significantly, "[t]he question whether arraignment signals the initiation of adversary proceedings ... is distinct from whether the arraignment itself is a critical stage requiring the presence of counsel...." *Michigan v. Jackson*, 475 U.S. 625, 630 n. 3, 106 S.Ct. 1404, 1407 n. 3, 89 L.Ed.2d 631 (1986). The test for determining whether a particular proceeding is itself a critical stage is "whether the presence of ... counsel is necessary to preserve the defendant's basic right to a fair trial...." *United States v. Wade*, 388 U.S. at 227, 87 S.Ct. at 1932. In undertaking this inquiry, a reviewing court must "analyze whether potential substantial prejudice to [the] defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Coleman v. Alabama*, 399 U.S. at 7, 90 S.Ct. at 2002; *United States v. Wade*, 388 U.S. at 227, 87 S.Ct. at 1932. Resolution of this question turns principally upon the State's treatment of the defendant's actions at the proceeding in issue. *See Hamilton v. Alabama*, 368 U.S. at 53, 54 & n. 4, 82 S.Ct. at 158 & n. 4. Thus, a defendant has been held entitled to counsel at an arraignment where, under state law, defenses not then raised are considered abandoned, *id.* at 53, 82 S.Ct. at 156, but not at an arraignment proceeding governed by a state law which provided that any uncounselled plea or waiver of rights was subject to withdrawal after the appointment of counsel. *Vitoratos v. Maxwell*, 351 F.2d 217, 221 (6th Cir.1965), *cert. denied*, 383 U.S. 105, 86 S.Ct. 718, 15 L.Ed.2d 618 (1966).

Applying these principles, this court held in *McClain v. Swenson*, 435 F.2d 327, 330 (8th Cir.1970), that in Missouri, the absence of counsel at arraignment is not per se a violation of the sixth amendment unless there is a showing that "by reason of the absence of counsel the appellant lost [a] right or privilege or the [S]tate gained some advantage." *See also Collins v. Swenson*, 443 F.2d 329, 332 (8th Cir.1971) ("under Missouri law the arraignment proceeding is not a critical phase of the state criminal procedure when no prejudice arises from it"); *Parks v. State*, 518 S.W. 2d 181, 184 (Mo.Ct.App.1974) (same).

Our review of the record in the case at hand persuades us that Gilmore did not lose any right or privilege, nor did the State gain any advantage, as a result of the fact that Gilmore was not represented by counsel at his arraignment. Gilmore's failure to raise a Chapter 552 defense within the ten-day period set forth in Mo.Rev. Stat. § 552.030(2) did not foreclose assertion of the defense, but required only that Gilmore demonstrate good cause for his untimeliness. Moreover, unlike the arraignment procedure in *Hamilton v. Alabama*, under the Missouri scheme, a trial court's refusal to accept an untimely request to raise the defense is reviewable. Thus, available defenses are not "irretrievably lost" if not raised at a Missouri arraignment. *Cf. Hamilton*, 368 U.S. at 54, 82 S.Ct. at 158. Finally, the Missouri Court of Appeals' decision in *Parks v. State*, 518 S.W.2d at 184, indicates that where there is no evidence of a mental disease or defect, no prejudice can be demonstrated as the result of the absence of counsel at arraignment and the subsequent inability to assert a Chapter 552 defense. In Gilmore's direct appeal, the Missouri Supreme Court not only found that no good cause had been shown for Gilmore's failure

to timely assert a Chapter 552 defense, but additionally stated that the trial court "with the evidence of [Gilmore's] mental condition [19] before it ... did not abuse its discretion in disallowing formal assertion of such defense." *State v. Gilmore*, 661 S.W.2d at 524. Gilmore has never challenged this conclusion, nor has he set forth any evidence in opposition to the Missouri Supreme Court's finding that the state trial court considered evidence of his mental condition before denying his request to formally assert a Chapter 552 defense. *See id.* In these circumstances, we conclude that the absence of counsel at Gilmore's arraignment did not violate his sixth amendment rights, and we affirm the district court's dismissal of this claim.

### D. Leg Irons.

■ Gilmore next contends that the district court erred in rejecting his claim that his fifth amendment rights were violated when he was forced to wear leg irons at trial. Both the district court and the Missouri Supreme Court dismissed Gilmore's claim on the dual grounds that (1) the trial court did not abuse its discretion in restraining Gilmore for security purposes; and (2) the jurors were unable to observe the restraints. *Gilmore v. Armontrout*, 681 F.Supp. at 636; *State v. Gilmore*, 661 S.W.2d at 525. We agree that in these circumstances, the presumption of innocence afforded to Gilmore, as a criminal defendant, was not abridged, and that no constitutional violation occurred.

The Supreme Court has characterized the use of shackles as "inherently prejudicial," *Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986), noting both that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant," and that "the use of [shackles] is itself something of an affront to the very dignity and decorum of judicial proceedings." *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337,

344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970)). *See also People v. Roman*, 35 N.Y.2d 978, 979, 324 N.E.2d 885, 886, 365 N.Y.S.2d 527, 528 (1975) (per curiam) ("A defendant is presumed innocent and he is entitled to appear in court with the dignity and the self-respect of a free and innocent man."). Consequently, shackling is subject to close judicial scrutiny in order to ascertain whether it was necessary for the furtherance of an essential state interest. *See Holbrook v. Flynn*, 475 U.S. at 568, 106 S.Ct. at 1345.

■ In ordering Gilmore to wear leg irons, the trial court expressly found that Gilmore presented a security threat because he had been charged with several other capital murders and, in one instance, had been tried and convicted. Clearly, the safety of a state's courtrooms is an essential state interest justifying the use of restraints. *See id.* Furthermore, federal courts have repeatedly recognized that a trial court's decision concerning courtroom security is accorded broad discretion and will not be reversed absent a showing of abuse. *See, e.g., Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir.1985); *Harrell v. Israel*, 672 F.2d 632, 636 (7th Cir.1982); *Payne v. Smith*, 667 F.2d 541, 544 (6th Cir.1981), *cert. denied*, 456 U.S. 932, 102 S.Ct. 1983, 72 L.Ed.2d 449 (1982). There is no evidence that the trial court abused its discretion in the present case.

Of equal importance, we reiterate the findings of both the district court and the Missouri Supreme Court that Gilmore's legs were under the counsel table and that the jury at no time was able to observe the restraints. In this connection, the record further reflects that the trial court ordered that Gilmore not be moved in the presence of the jury. Relatedly, the record discloses that the court recessed prior to Gilmore's testimony, permitting Gilmore to approach the witness stand outside the presence of the jury. In these circumstances, we have

---

**19.** The Missouri Supreme Court's opinion indicates that the State presented the testimony and written reports of three psychiatrists, each of whom concluded that Gilmore understood the nature of the charges against him, that he was

able to assist in his defense, and that he was not suffering a mental disease or defect within the meaning of Chapter 552. *State v. Gilmore*, 661 S.W.2d at 524.

little difficulty concluding that the jury did not observe anything "so prejudicial as to pose an unacceptable threat to [Gilmore's] right to a fair trial." *Holbrook v. Flynn*, 475 U.S. at 572, 106 S.Ct. at 1347. Furthermore, we note that Gilmore never objected to the use of restraints. *See Estelle v. Williams*, 425 U.S. 501, 512–13, 96 S.Ct. 1691, 1696–97, 48 L.Ed.2d 126 (1976) (failure to object to being tried in prison attire is sufficient to negate a constitutional violation). Accordingly, we conclude that the district court committed no error in rejecting this claim.

### E. Dismissal of Prospective Juror.

■ Next, Gilmore argues that the district court erred in dismissing his claim that the trial court's sua sponte dismissal of a prospective juror deprived him of his sixth amendment right to a jury chosen from a cross-section of the population. The basic facts underlying this claim are undisputed. Prior to the trial, the presiding judge excused Robert Knoll, an individual scheduled as a venireman, because Knoll, a former police officer, indicated that he wanted to bring a gun to the trial.

Thereafter, Gilmore moved for a mistrial on the ground that the prospective panel included fifty-eight rather than sixty persons. Gilmore challenged the sua sponte excusal of Knoll, and a hearing was held. At that proceeding, the county sheriff and an associate circuit judge testified to the effect that Knoll had stated that he was frightened, that in their opinion Knoll was biased against the defense, and that they feared Knoll would poison the jury by discussing his personal knowledge of the case. The trial court concluded that Knoll had been excused for a reasonable purpose, and denied Gilmore's mistrial motion.

On direct appeal, the Missouri Supreme Court held that the trial court did not abuse its discretion in excusing Knoll, noting in particular that Gilmore had not demonstrated that he was prejudiced or his interests adversely affected by the trial court's action. *State v. Gilmore*, 661 S.W. 2d at 523. The district court agreed, *see*

*Gilmore v. Armontrout*, 681 F.Supp. at 639–40, as do we.

In Missouri, a "trial court has the authority to strike prospective jurors on its own motion." *State v. Marshall*, 571 S.W.2d 768, 772 (Mo.Ct.App.1978). Although the trial court's reason for excusing Knoll is not listed among the statutory justifications for excuse, *see* Mo.Rev.Stat. § 494.031, it is well settled in Missouri that "the statute is merely discretionary and [a defendant] must show that he has been prejudiced or that his interests have been adversely affected by failure to strictly observe these statutory provisions in alleging error on the part of the [trial] judge." *State v. Holt*, 592 S.W.2d 759, 767 (Mo. 1980) (en banc) (citation and internal quotation omitted). It is beyond peradventure that the excusal of Knoll did not prejudice Gilmore, and in fact was to his advantage.

Although Gilmore attempts to liken this case to *Anderson v. Frey*, 715 F.2d 1304 (8th Cir.1983), *cert. denied*, 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984), Gilmore's reliance upon *Anderson* is inapposite and warrants little discussion. In *Anderson*, this court condemned the practice of a sheriff supervising the selection of bystander jurors. Pivotal to the *Anderson* decision was the concern that the participation of an interested official in the juror selection process is fundamentally unfair. *Id.* at 1309. There is no evidence in the instant case that the sheriff was involved in the selection process; moreover, the trial court, not the sheriff, excused Knoll. Thus, the same concerns are not implicated here.

### F. Introduction of Videotaped Confession.

■ Lastly, Gilmore contends that the district court erred in rejecting his claim that he is entitled to habeas corpus relief because during the sentencing phase of the trial the jury was permitted to view a videotaped confession in which Gilmore admitted killing an elderly couple. Gilmore argues that the confession was introduced solely for the purpose of inflaming the

jury, and that its prejudicial impact outweighed its probative value.

As a matter of federal constitutional law, the trial court committed no error in allowing the introduction of the confession. The Supreme Court has held that a wide scope of evidence and argument is admissible during the penalty phase of a capital murder trial, provided that such evidence is not "constitutionally impermissible or totally irrelevant to the sentencing process." *Zant v. Stephens,* 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983). This broad use of evidence has been sanctioned because it helps prevent arbitrary and capricious imposition of the death penalty by channelling the jury to focus upon "each individual homicide and individual defendant," *Proffitt v. Florida,* 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976), and because it is "desirable for the jury to have as much information as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976).

The admission of Gilmore's confession was not constitutionally impermissible; it did not authorize the jury to draw adverse inferences from a constitutionally protected activity. *See Zant,* 462 U.S. at 885, 103 S.Ct. at 2747. Furthermore, the confession was relevant to the existence of a statutory aggravating circumstance. *See* Mo.Rev. Stat. § 565.006 (in a capital sentencing proceeding, the judge or jury "shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty, or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas") (repealed 1983); *State v. Shaw,* 636 S.W.2d 667, 675 (Mo.) (en banc) (admission of evidence of prior conviction is permissible in Missouri in penalty phase of capital murder trial), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *see also Gregg,* 428 U.S. at 197, 203–04, 96 S.Ct. at 2939–40 (evidence of prior crimes, permitted under Georgia statute, does not violate the Constitution but focuses inquiry upon characteristics of the individual defendant). In these circumstances, although

we recognize that adverse evidence is always somewhat prejudicial, we cannot say that the admission of Gilmore's confession was impermissibly so. Accordingly, we agree with the Missouri Supreme Court's conclusion that the trial court did not abuse its discretion in admitting the confession, *see State v. Gilmore,* 661 S.W.2d at 524, and with the district court's determination that the admission of the confession did not offend Gilmore's constitutional rights. *See Gilmore v. Armontrout,* 681 F.Supp. at 640–41. Consequently, we conclude that Gilmore's final claim is without merit.

### III.

In summary, we have considered the claims advanced in Gilmore's petition and conclude that each is insufficient to warrant habeas corpus relief. Accordingly, we reverse the district court's order granting Gilmore's petition and reinstate the original sentence.