**Michael Lee SMITH, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 89–2803.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1990.

Decided Jan. 15, 1991.

J. Blake Hendrix, Little Rock, Ark., for appellant.

Clint Miller, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and VAN SICKLE, Senior District Judge.

LAY, Chief Judge.

Michael Lee Smith appeals the magistrate's denial of his petition for a writ of habeas corpus. Smith alleges: 1) his Sixth Amendment rights were violated when he was denied counsel at a critical stage of the criminal proceedings; 2) his due process rights were violated when he was denied counsel at a critical stage of the proceedings; and 3) his eighth amendment rights were violated by imposition of a cruel and unusual sentence of 242 years in jail. We hold that Smith was denied counsel at a critical stage, and accordingly vacate the decision of the magistrate denying the writ.[1]

## BACKGROUND

Michael Lee Smith was a truck driver for Youngblood's Trucking Company located in Alma, Arkansas. On October 1, 1986, Smith discovered that several items had been stolen from his truck, which was parked at the Youngblood facility. Smith was upset and called the owner, Don Youngblood, to complain and to obtain his paycheck. Youngblood informed him that nothing could be done about the stolen items and that he would have to wait until the next day to receive his paycheck. After a contentious argument, Youngblood fired Smith.

Smith then went to the company office where a heated discussion ensued. Smith left the office and returned with a pistol in his waistband and demanded his paycheck. He told the seven people in the office that he would kill them if anyone pulled up in front of the building or the telephone lights lit up. Although Smith waved the gun in the air at some point, not everyone in the office saw the gun and there is a dispute whether Smith specifically pointed the gun at any one individual. (*e.g.*, App. 171, 177, 180, 195). Smith was given his paycheck, he thanked everyone for their cooperation, and then left the premises. (App. 147). The incident lasted approximately thirty to forty-five minutes. (App. 130, 166, 168). Smith never physically touched any of the seven people, nor were any of them physically harmed.

The one-day jury trial resulted in guilty verdicts on seven counts of terroristic threats and seven counts of false imprisonment. Because Smith used a handgun, the jury was instructed it could enhance Smith's sentence by fifteen years for each count of both offenses. The jury fixed Smith's sentence at twenty-one years for each count of making terroristic threats and fifteen years for each count of false imprisonment. The state trial judge ordered all of the sentences to run consecutively, for a total of 242 years in prison.[2]

---

1. In view of our holding that Smith was denied counsel at a critical stage of the criminal proceedings, we need not pass on the state's argument that Smith is procedurally barred from raising the eighth amendment claim. We therefore do not determine whether the sentence violated the eighth amendment. We do observe, in accord with Justice Purtle of the Arkansas Supreme Court, that this sentence represents an "outrageous" and harsh sentence. It is difficult to believe in today's society that an individual can be shunted away to prison for 242 years because of an emotional, obviously frustrated outburst against his employer, albeit with threatening gestures to seven people. Although this sentence might be legalistically condoned, it should shock the inner conscience of reasonable minds that our laws allow such treatment.

On Smith's direct appeal, Justice Purtle dissented from the majority's affirmance of

Smith's conviction, finding the sentence "outrageous," "unconscionable," and without justification. *Smith v. State*, 296 Ark. 451, 457–58, 757 S.W.2d 554, 557–58 (1988) (Purtle, J., dissenting). At oral argument in this appeal, counsel for the state conceded that this was a "very, very harsh sentence," and that he had never heard of a sentence this extreme.

Nowhere in the record is there any indication that Smith had any prior criminal record. Under Ark.Code Ann. § 16–93–607 (1987), first offenders who have employed a firearm in the commission of a felony must serve one-half of their sentence before being eligible for parole. § 16–93–607(c)(2). Smith's sentence is in effect a sentence of life imprisonment without possibility of parole.

2. Adding up all the individual counts, the actual sentence should have been 252 years, but the clerk entered the sentence as 242 years.

The Arkansas Supreme Court affirmed Smith's conviction, with one justice dissenting. *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). Smith's pro se petition for state post-conviction relief was denied in an unpublished decision. *Smith v. State*, CR 87–123, 1989 WL 50532 (Ark. May 8, 1989) (available on Westlaw: 1989 WL 50532). Smith then filed a petition for a writ of habeas corpus in federal court and proceeded pro se before the magistrate pursuant to 28 U.S.C. § 636(c) (1989). Without holding an evidentiary hearing, the magistrate summarily dismissed Smith's application for a writ of habeas corpus.

## DISCUSSION

### I.

On October 6, 1986, Smith was arraigned before Judge Donald Langston in Crawford County Court on seven counts of terroristic threatening in the first degree and seven counts of false imprisonment in the first degree. Because Smith was unable to afford an attorney, the trial judge appointed Robert Marquette, the sole public defender in Crawford County, to defend Smith. Smith objected to having Marquette represent him, citing a conflict of interest. The judge told Smith he either could accept Marquette or could proceed pro se. Smith informed the judge that he wanted a lawyer, but that he would not accept Marquette. Smith objected to the poor representation Marquette had afforded other defendants, as well as the fact that Mar-

quette served as a municipal judge in Crawford County. The judge apparently construed this as a waiver of the right to counsel and told Smith he would be proceeding pro se. (App. 70–73).

On November 10, 1986, Smith and five other named prisoners in the Crawford County jail filed a pro se class action lawsuit in federal court naming Judge Langston, the public defender Marquette, and others as defendants. The § 1983 suit alleged a conspiracy of Crawford County officials to violate the rights of defendants, including the rights to a speedy trial and the effective assistance of counsel.[3] The suit asked the federal district court for injunctive relief. Smith also filed numerous pro se motions in his criminal case before Judge Langston. (App. 33–48, 60–62).

On November 6, 1986, Judge Langston conducted a pre-trial omnibus hearing in Smith's criminal case. Smith appeared pro se, but Marquette was present. At the beginning of the hearing, Smith again told the judge that he wanted a lawyer, but had irreconcilable conflicts with Marquette. In addition to the fact that Marquette was a part time municipal judge, Smith cited the class action suit that was to be filed against Marquette as well as the fact that Marquette was representing both Smith and his co-defendant on another charge pending before the court.[4] Although Smith attempted to argue the merits of his stated conflict of interest, Judge Langston refused to inquire further.[5] The judge re-

---

**3.** The class action alleged a continuing course of conduct by Judge Langston, Marquette, the sheriff, and David Ferguson, a deputy county attorney, that resulted in the denial of fundamental rights to criminal defendants in Crawford County. Specifically, the suit alleged that the pre-trial detainees spent as much as three weeks in jail before being arraigned, were denied a speedy trial, and co-defendants were forced to accept representation by the same public defender even when a clear conflict of interest existed. (App. 55–59). The complaint, although not artfully drafted, contained serious allegations of constitutional deprivations. *Cf. Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir. 1990) (holding that prisoner's § 1983 suit against sheriff in Ashley County, Arkansas for failing to give prompt judicial determination of probable cause was not frivolous).

**4.** Although the record is not clear as to the exact date, sometime after being incarcerated on the false imprisonment and terroristic threatening charges, Smith and another inmate escaped. Smith indicates that he escaped and allowed himself to be captured for the purpose of drawing public attention to the continuing deprivation of the rights of pre-trial detainees in Crawford County. Apparently, Smith got a fair amount of publicity. (App. 72, 80, 85). Smith and his co-defendant were charged with escape, but we have no record of any disposition. (App. 52).

**5.** The following exchange took place:
MR. SMITH: Your Honor, I've got a class-action suit pending in Federal Court, right, now.
THE COURT: I don't care who you've sued Mr. Smith * * * *.

fused to appoint a different attorney, and again told Smith he had to accept Marquette or proceed pro se. (App. 73–74). At one point, Judge Langston told Smith he did not "have any authority to appoint anybody else." (App. 83). The judge then offered to appoint a legal advisor to assist Smith with his pro se defense, which Smith accepted. Despite Smith's stated objections to Marquette, Judge Langston appointed Marquette as Smith's legal advisor. (App. 76, 87). Because of the possible conflict of interest stemming from the federal lawsuit, Marquette told Judge Langston that he had misgivings about even being appointed Smith's legal advisor. Judge Langston refused to consider these objections.[6]

During this same hearing, Smith also moved for Judge Langston to disqualify himself because the judge was biased against him. (App. 76–77). Smith believed that Judge Langston could not give him a fair trial as the judge was personally prejudiced against him because of Smith's class action suit against the judge and remarks Smith had made to the media impugning the judge. Judge Langston summarily denied the motion. (App. 77).

Smith also presented numerous pro se motions, including a motion to dismiss the charges based on denial of his right to a speedy trial and a motion to reduce bail. Most of Smith's other motions concerned access to law books and other materials Smith believed necessary to conduct his pro se defense. All of these motions were denied. (App. 77–86). The day after the omnibus hearing, twelve days before trial, Judge Langston appointed a member of the private bar to represent Smith. At trial,

Smith functioned as co-counsel with his newly appointed attorney.

## II.

Smith argues he was denied his Sixth Amendment right to counsel at a critical stage of the proceedings against him—the omnibus hearing held November 6, 1986. He argues he had a right to conflict-free counsel, and that the court should have conducted an inquiry once it was alerted to the conflict between Marquette and Smith. Because the judge refused to appoint conflict-free counsel, Smith argues he was forced to proceed without representation at the omnibus hearing in violation of the sixth amendment.

It is undisputed that Smith appeared at the omnibus pre-trial hearing without representation. At arraignment, he had refused to accept the public defender because he believed there was a conflict. At the beginning of the omnibus hearing, he again refused the public defender for the same reason, and the hearing then continued with Smith proceeding pro se. We first consider whether the omnibus hearing, on these facts, constituted a critical stage in the criminal proceedings against Smith.

## A.

■ Under the Sixth Amendment,[7] defendants in criminal proceedings are entitled to the assistance of counsel at all critical stages of the proceeding against them. *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). Critical stages can include those conducted "at or after the initiation of adversary criminal proceedings—whether by way of formal charge, preliminary hearing, indict-

---

(App. 76).

**6.** At the same omnibus hearing, the following exchange between Marquette and Judge Langston occurred:

> MR. MARQUETTE: Your Honor, the only problem, the only difficulty, I have in this, is that my understanding from what Mr. Smith has stated today in Court that apparently he's anticipating or has filed some type of legal actions against certain officers of this Court, which I am one.

THE COURT: Mr. Marquette, that gives me no bother, whatsoever.
MR. MARQUETTE: Your Honor, I'm wondering as to a possible conflict in them?
THE COURT: No, sir, there is not. The Court is going to hold that, Mr. Marquette.
(App. 89).

**7.** The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.

ment, information or arraignment." *Gilmore v. Armontrout*, 861 F.2d 1061, 1070 (8th Cir.1988) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)), *cert. denied* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). Critical stages also can include steps in the proceedings in which the accused is confronted by the procedural system or the prosecutor or both, *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984), and where available defenses may be irretrievably lost. *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961). The Supreme Court has explained that

> [I]n addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.... [W]e scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial....

*Wade*, 388 U.S. at 226–27, 87 S.Ct. at 1931–32.

■ Smith argues that the omnibus hearing held November 6th was a critical stage necessitating assistance of counsel. The hearing was held pursuant to Ark.R. Crim.P. 20. It is a pre-trial hearing in which motions are made and ruled upon, and procedural and constitutional issues are considered. Defendants are allowed to change their plea. Rule 20.3. Any defenses or motions that could have been made are waived unless the party lacked the information to raise the issue. Rule 20.-3(c).

At the November 6th hearing, the court considered eleven pro se motions Smith had filed, as well as whether Smith would agree to accept Marquette as his attorney at trial or instead proceed without representation. At least two of Smith's motions constituted important matters in which the assistance of counsel could have been of critical importance. The first was a motion to reduce bail, which the prosecutor vigorously resisted. The Supreme Court has recognized the special role played by counsel at preliminary hearings in which bail reduction motions are considered. *Coleman v. Alabama*, 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970). The other significant motion heard by the court was Smith's motion to dismiss the charges. Smith alleged that the long delay before his arraignment, and long wait for a trial date, denied him due process and mandated dismissal of the charges. (App. 77–79). This motion obviously had the ability to influence the outcome of the proceedings; if it were granted there would be no trial. Smith's grounds for dismissal were not frivolous, and a competent attorney could have provided meaningful assistance. In addition, other important motions bearing on the fairness of the trial could have been raised with the assistance of an attorney.[8] Given the important issues that were considered and the fact that defenses could be irretrievably lost if not raised, we conclude

---

**8.** For instance, after the trial had begun, Smith moved to suppress the handgun seized from his apartment, arguing there was insufficient evidence to show that the gun was the weapon he used in committing the crime. He argued that the witnesses and the jury would be prejudiced if the prosecution were allowed to brandish the gun in the courtroom, because part of his strategy was to show that not all of the complaining witnesses had actually seen him with a gun the day of the incident at Youngblood's offices. The judge denied his motion. (App. 108–09). Later in the trial, the judge sustained Smith's objection to the introduction of the gun into evidence until he could determine in an evidentiary hearing whether the State's exhibit was the same gun used by Smith. (App. 200). Of course, by this time the State had shown the jury and nearly all of the eyewitnesses the gun, suggesting that it was the one used by Smith. A motion at the omnibus hearing to suppress this evidence could have avoided any prejudice to Smith at trial.

Also of interest is the likelihood that Smith did not fully understand the purposes of the omnibus hearing, and almost certainly did not know he could move to suppress evidence at this hearing. Just before the trial began, Smith asked the judge why there had "never been an evidentiary hearing or a preliminary hearing, you know, a motion to suppress?" The judge did not answer him. (App. 102).

that the November 6th omnibus hearing was a critical stage necessitating the assistance of counsel.

## B.

 A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985); *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United States v. Hart,* 557 F.2d 162, 163 (8th Cir.) (per curiam), *cert. denied,* 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977). Once good cause is shown, the trial judge must appoint different counsel. *Id.; United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587 (1973); *see also Holloway v. Arkansas,* 435 U.S. 475, 488–91, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978).[9]

 Courts have long recognized that the Sixth Amendment right to counsel contains a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (plurality); *Hart,* 557 F.2d at 163. Counsel must be willing "to advocate fearlessly and effectively" on behalf of the client. *United States v. Hurt,* 543 F.2d 162, 167–68 (D.C.Cir.1976). Conflict of interest and divided loyalty situations can take many forms, and whether an actual conflict exists must be evaluated on the specific facts of each case. In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties. *Zuck v. Alabama,* 588 F.2d 436, 440 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), and can include

situations in which the caliber of an attorney's services "may be substantially diluted." *Hurt,* 543 F.2d at 166.

 When a defendant raises a seemingly substantial complaint about counsel, the judge "has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction." *Hart,* 557 F.2d at 163; *see also Hudson v. Rushen,* 686 F.2d 826, 829 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); Schwarzer, *Dealing with Incompetent Counsel—The Trial Judge's Role,* 93 Harv. L.Rev. 633, 652 (1980); *cf. Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981) (holding that mere possibility of a conflict of interest triggers duty to inquire). The trial court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern. *Hudson,* 686 F.2d at 829. That inquiry should be on the record.

In this case, Smith voiced his objection to public defender Marquette at the earliest possible time, his arraignment. Because there is no record of that proceeding, we cannot tell if there was an adequate inquiry made at that time. At the beginning of the omnibus hearing, however, Smith again informed the judge of his dissatisfaction with Marquette, and cited both a complete breakdown in communication and a possible conflict of interest that had arisen since his arraignment. These allegations were seemingly substantial and merited inquiry. When Smith first informed the judge of the possible conflict of interest because of the class action suit to be filed in which he was a named plaintiff, Judge Langston replied "I don't care who you've sued, Mr. Smith...." (App. 76). At one point, however, the judge pondered the idea of appointing a different attorney, but the prosecutor vigorously argued against doing so and the judge decided against it. (App. 71–72). Although the judge did give Smith the opportunity to speak, Judge Langston failed to ask Smith any questions. Without

---

9. Some courts have tempered this proposition in situations where the trial has already begun and the defendant for the first time expresses dissatisfaction with counsel. *See, e.g., Wilson,* 761

F.2d at 281 (holding that rights of accused must be balanced with public's interest in prompt and efficient administration of justice).

further inquiry, and notwithstanding Marquette's expressed concern about the conflict, the judge overruled Smith's motion for new counsel.

■ A federal lawsuit pitting the defendant against his attorney certainly suggests divided loyalties and gives the attorney "a personal interest in the way he conducted [Smith's] defense—an interest independent of, and in some respects in conflict with, [Smith's] interest in obtaining a judgment of acquittal." *Douglas v. United States*, 488 A.2d 121, 136 (D.C.App. 1985) (finding a conflict of interest when defendant filed a complaint against his retained counsel with the Office of the Bar Counsel).[10] Also instructive is *United States v. Hurt*, 543 F.2d 162 (D.C.Cir.1976). In *Hurt*, appellate counsel argued that trial counsel was constitutionally ineffective, prompting the trial counsel to file a defamation claim against the appellate attorney. *Id.* at 164. The appellate court had remanded the case to the district court for an evidentiary hearing on the ineffectiveness claim, and appellate counsel objected to continuing his representation with the defamation suit hanging over his head. *Id.* The trial judge ordered him to continue his representation. *Id.* The Court of Appeals reversed, holding that there was a clear conflict of interest, even though the chance of the defamation suit succeeding was minuscule. *Id.* at 166–167.[11]

## C.

■ We believe Smith showed sufficient cause for substitution of counsel when he cited both a conflict of interest between him and his appointed attorney and explained that they were unable to communicate with each other. Once good cause was shown, the trial judge violated Smith's sixth amendment rights by failing to appoint different counsel to assist him at the omnibus hearing, which was a critical stage of the proceedings. The important issues considered at the omnibus hearing, and the issues that could have been raised by a skilled attorney, demonstrate that Smith was prejudiced by the denial of counsel at the pre-trial hearing.

■ When a complete denial of counsel at a critical stage is shown, there is often no need to show prejudice, and the resulting trial is presumed to be unfair. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Smith v. Anderson*, 689 F.2d 59, 65 (6th Cir.1982). In many instances in which a defendant was denied counsel at a critical stage, prejudice is so likely that a case-by-case inquiry into prejudice is not

10. In *Douglas,* the trial court declared a mistrial after learning of the Bar Counsel complaint. In affirming the trial court's decision, the D.C. Circuit court explained that because the complaint lodged with the Bar Counsel could be extended to allegations of ineffective assistance of counsel at trial, the attorney naturally would be apprehensive about his performance, and would have an "inordinate interest in conducting the defense in a manner calculated to minimize any opportunity for *post hoc* criticism of his efforts." *Id.* at 137. This could compromise the attorney's judgment about the best means of defending the case and encourage the most conservative trial strategy. In addition, concern about the pending investigation might chill communications between the defendant and his attorney resulting in a weakened defense. *Id.* The court also noted that the defendant would have been entitled to a new trial on sixth amendment grounds had he been convicted.

11. We recognize the danger of any holding implying that defendants can manufacture conflicts of interest by initiating lawsuits against their attorneys. *Cf. Hudson v. Rushen,* 686 F.2d 826, 831 (9th Cir.1982) (noting that complete breakdown of communication between defendant and his counsel occurred only after defendant's abrupt departure from the courtroom, which was a voluntary act), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). A patently frivolous lawsuit brought by a defendant against his or her counsel may not, alone, constitute cause for appointment of new counsel. Trial judges must be wary of defendants who employ complaints about counsel as dilatory tactics or for some other invidious motive. *United States v. Welty,* 674 F.2d 185, 193–94 (3d Cir.1982). Here, however, Smith raised his objection to Marquette at the earliest possible time and consistently and vigorously objected to him. In addition, Smith's suit was not patently frivolous. Even Judge Langston, upon reflection, must have concluded that there was good cause for appointment of different counsel because he appointed new trial counsel the day after the omnibus hearing. By this time, however, Smith had already been denied his right to counsel at the omnibus hearing.

necessary. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Courts have, however, conducted a harmless error analysis when a defendant has been denied counsel at some types of preliminary hearings. *See Coleman v. Alabama*, 399 U.S. 1, 10–11, 90 S.Ct. 1999, 2003–04, 26 L.Ed.2d 387 (1970); *Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir.1985). Although new trial counsel was appointed for Smith's trial, important defenses had already been irretrievably lost. No harmless error exists here.[12]

### III.

Because of our holding that Smith was denied counsel at a critical stage, we need not reach his claim that his sentence of 242 years in prison constitutes cruel and unusual punishment. It is readily apparent, however, that the sentence given was grossly excessive, given the facts of this case. It appears that Smith had no prior criminal record. Smith points out that under Arkansas law, had he shot and wounded all seven people in the office, he could have been charged with seven counts of first degree battery, and the maximum sentence he could have received would have been 140 years. *See* Ark.Code Ann. §§ 5–13–201, 5–4–401 (1987). Under the present sentence, Smith will not be eligible for parole for at least 121 years; the sentence is in effect a life sentence without possibility of parole.

### CONCLUSION

We reverse the order of the magistrate and grant Smith's petition for a writ of habeas corpus, conditioned on the state retrying the defendant, with appropriate appointment of counsel and before a different state trial judge.

---

**12.** Had the trial judge conducted a "thorough hearing" into Smith's allegation of a conflict of interest, we believe Judge Langston would have discovered a serious question of possible bias on the part of the trial judge himself. In addition to public defender Marquette, Judge Langston was a defendant in Smith's federal class action suit. Early in the omnibus hearing, Smith moved for the judge's disqualification based upon the inherent personal bias and prejudice of the judge. Without any further inquiry, Judge Langston summarily denied this motion.

In *Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (per curiam), a defendant was cited for contempt during his trial. *Id.* at 213, 91 S.Ct. at 1779. Johnson moved the judge to recuse himself from presiding over the contempt proceeding because of bias. Johnson then filed a federal civil rights lawsuit naming the judge as a defendant. Johnson again asked the judge to remove himself, which the judge refused to do. The judge found Johnson guilty of contempt and sentenced him to jail. *Id.* at 213–14, 91 S.Ct. at 1779–80. The Court held that the judge should have recused himself because the federal lawsuit naming him as a defendant made it impossible for him to be unbiased toward Johnson. *Id.* at 215–16, 91 S.Ct. at 1780–81. The D.C. Circuit has explained the import of *Johnson:*

Thus, the trial judge, by virtue of his status as a defendant in a suit brought by the alleged contemnor, was in an adversary posture with respect to him, and was presumptively biased. *This is true even though the judge's status as an adversary party was created by an action of the alleged contemnor filing suit....*

*United States v. Meyer*, 462 F.2d 827, 842 (D.C. Cir.1972) (emphasis added). In general, judges should recuse themselves when they have become enmeshed in personal disputes with parties before them. *See, e.g., id.* at 836; *Clark v. State*, 287 Ark. 221, 697 S.W.2d 895, 897 (1985). The Supreme Court has explained that "when the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from view, and we must presume the process was impaired." *Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986) (dicta) (citing *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927)); *see also Bolden v. State*, 262 Ark. 718, 720, 561 S.W.2d 281, 283 (1978); Code of Judicial Conduct, Canon 3(C) (1972) (judges should disqualify themselves when their impartiality "might reasonably be questioned").

Trial proceedings before a biased judge are presumptively unfair and such unfairness is reason enough to grant a writ of habeas corpus. *See Walker v. Lockhart* 763 F.2d 942, 960 (8th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986).