UNITED STATES of America, Appellee,

v.

**Dana BLUM, Appellant.**

UNITED STATES of America, Appellee,

v.

**Chester BLUM, Appellant.**

Nos. 94–3445, 94–3681.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided Sept. 15, 1995.

Ramona Marten, St. Louis, MO, argued, for appellant Dana Blum.

Michael Burton, St. Louis, MO, argued, for appellant Chester Blum.

Thomas Mehan, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Chester and Dana Blum appeal their convictions for armed bank robbery, 18 U.S.C. § 2113(a) and (d), and using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1). We affirm.

### BACKGROUND

We recite only the facts which bear upon the issues Chester and Dana raise on appeal. On the morning of February 26, 1994, a man and woman robbed the Colonial Bank in St. Louis, Missouri of $44,000.00. The man was brandishing a shotgun, the woman a revolver. Of the money taken, $50.00 (five $10 bills) consisted of currency for which the serial numbers had been recorded, i.e., "bait bills."

During the robbery, a bank drive-through customer, Edward Brennan, noticed some unusual behavior inside the bank. He then saw two people leave the bank and drive away in a brown Chevrolet Impala. Brennan followed the Impala until it arrived at a parking lot some distance away. Upon arrival at the parking lot, he witnessed a woman get out of the car and board a blue Chevrolet

pickup bearing the Nevada license plate "PREZ 4X4." Brennan recorded the license number of the pickup and called the police.

After receiving Brennan's information, the FBI and local authorities contacted several motels in the vicinity of Colonial Bank. At a nearby Motel 6, a blue Chevrolet pickup bearing the Nevada license plate "PREZ 4X4" was registered as belonging to the recent occupants of Room 300. From that room, FBI agents lifted the fingerprints of both Chester and Dana Blum.

The FBI later discovered that Chester and Dana lived in Mulkeytown, Illinois. On March 10, 1994, agents went to Mulkeytown to arrest the Blums. Parked in front of the Blums' house in Mulkeytown was a blue Chevrolet pickup bearing the Nevada license plate "PREZ 4X4." After his arrest, Chester refused to consent to a search of his and Dana's property, so a warrant was obtained to search both the truck and house. Agents seized one of the five "bait bills" from the truck. From the cold-air return in the living room of the house, $5,110.00 in currency was seized. In addition, one box of 12 gauge shotgun shells and a box of .357 magnum cartridges was seized from the Blums' house.

Chester and Dana initially appeared before a federal magistrate judge on March 11, 1994. On March 24, a federal grand jury indicted Chester and Dana each on one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1).

On March 29, the Blums were arraigned. Chester's appointed counsel, Bruce Antrim, failed to appear at the arraignment. Consequently, Chester requested substitute counsel. The arraigning magistrate judge declined to appoint substitute counsel, but offered to continue the arraignment until Antrim was available. Chester, however, refused the magistrate judge's offer and pleaded not guilty. Chester later moved to proceed pro se in the district court. At a hearing on May 20, 1994, the court granted his motion. At Chester's request, Antrim was appointed to serve as standby counsel.

A month before trial, Dana moved to sever her trial from Chester's, see Fed.R.Crim.P. 14, but the district court overruled her motion. On the first day of trial, Dana renewed her motion and it was again overruled. The court also overruled the Blums' motions in limine to exclude from evidence the shotgun shells and .357 magnum cartridges seized from their home. During voir dire, the court refused Chester and Dana's joint request to strike for cause venireman Boubek, a former police officer of 29 years.

During the presentation of evidence, the circumstantial evidence adduced by the government was overwhelming. Rob O'Heron and Gina Floyd testified that on the day before the robbery they sold a brown Chevrolet Impala, similar to the one Edward Brennan identified as the getaway car, to two people roughly matching the Blums' description. Neither O'Heron nor Floyd was able to identify Dana in court; O'Heron did, however, identify Chester. Several Colonial Bank employees and customers present during the robbery also testified. Because the robbers were wearing disguises and long coats, none of the employees and customers could positively identify the Blums. Most, however, described the robbers as having roughly the same physical traits as the Blums, and most were able to describe the type of weapons used in the robbery. In addition, the jury was able to view several still photographs of the woman robber taken while she was inside the bank. The jury also heard Edward Brennan's testimony, as well as the testimony of several Motel 6 employees which linked the Blums and their blue Chevrolet pickup with Room 300 where the fingerprints were lifted. Various FBI agents and police officers testified, describing both events leading up to the Blums' arrest, as well as the arrest itself. Finally, one witness testified that on March 7, 1994, less than two weeks after the robbery, he sold a motorcycle to Dana Blum for $8,000.00 cash. He could not identify Dana in court, but recalled that she was with a man named Chester. Another witness, also unable to identify Dana in court, testified that in March 1994, he sold to a woman named Dana Rowland a Mazda RX–7 for $4,900.00 in cash.

Neither Chester nor Dana testified. Their cases in chief merely consisted of several photographs introduced into evidence. At the close of the evidence, while attorneys were attending an instruction conference and Chester and Dana were incarcerated, Dana told a federal marshal she wanted to testify. The marshal, in turn, informed the district court of Dana's request. The court considered but rejected the tardy request to reopen the evidence. Chester and Dana were then brought back into court, closing arguments were heard, the jury was instructed, and deliberations began. The jury found Chester and Dana each guilty of both counts in the indictment. Chester and Dana now separately appeal various aspects of their convictions.

## DISCUSSION

### I. Chester Blum

■ Chester first contends that the arraigning magistrate judge erred by not conducting a more thorough inquiry into his dissatisfaction with lawyer Antrim—who had previously been appointed by another magistrate judge—and by refusing to appoint substitute counsel at the arraignment.

Only "[w]hen a defendant raises a seemingly substantial complaint about counsel [does the court have] an obligation to inquire thoroughly into the factual basis of a defendant's dissatisfaction." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991). *See also United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977). The inquiry, if any, must be on the record and must work to "ease the defendant's dissatisfaction, distrust, or concern." *Smith*, 923 F.2d at 1320.

Chester's request for substitute counsel was accompanied by several conclusory complaints, including that Antrim "hasn't done anything," "he's never had a criminal case before in his life," and that Chester had a personality "conflict" with Antrim. Chester's only specific and arguably substantial complaint about Antrim was that Antrim had erred by not moving to dismiss Chester's indictment on grounds that a preliminary examination was not conducted within ten

days of Chester's initial appearance. *See* Fed.R.Crim.P. 5(c) (defendant in custody entitled to preliminary examination "not later than 10 days following the initial appearance"). In response to Chester's claim about Antrim's failure to file the motion to dismiss, the prosecutor noted that lawyer Antrim had, in fact, orally moved to dismiss under the ten-day rule and that the motion was still pending before another magistrate judge.

After hearing the comments of both the defendant and prosecutor, the magistrate judge informed Chester that any attorney licensed to practice in federal court was qualified to handle his case. He also informed Chester that his case was in its early stages, and that Antrim would have plenty of time to prepare his case for trial. Without commenting on its possible merits, the magistrate judge assured Chester that a written motion under the ten-day rule could still be filed. In our view, the magistrate judge conducted a more-than-adequate inquiry in response to Chester Blum's complaints about appointed counsel. The court also offered to postpone the arraignment until Antrim could be present but Chester Blum refused. On these facts, we find no error.

On appeal, Chester also suggests that Antrim's mere failure to appear at the arraignment necessitated more thorough inquiry into the factual basis of his dissatisfaction with Antrim. Of course, we do not condone Antrim's failure to appear at the arraignment.[1] However, we do not believe that a single episode of non-appearance at a judicial proceeding gives rise to the need for more thorough inquiry than was conducted here. *Cf. Laird v. United States*, 987 F.2d 527, 530 (8th Cir.1993) (counsel not ineffective for failing to attend post-trial debriefing).

■ Chester next argues that his sixth amendment right to counsel was violated because he was arraigned without the presence of counsel.

■ In considering a request to reverse a conviction based on an alleged violation of the sixth amendment right to counsel at certain pretrial proceedings, we address three

---

1. The record gives us no indication of the reason for Antrim's absence.

issues. First, the alleged violation must have occurred at a critical stage of the proceedings at which the right to counsel had attached based on the potential for substantial prejudice to an unrepresented defendant. Second, there must have been no valid waiver of the right to counsel. Third, there must have been actual prejudice to the defendant from the absence of counsel warranting reversal. *Cf. Gilmore v. Armontrout*, 861 F.2d 1061, 1070–71 (8th Cir.1988), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); *McConnell v. United States*, 375 F.2d 905, 909–10 (5th Cir.1967).

■ It is settled that a criminal defendant acquires "the right to assert the protections of the sixth amendment in all critical stages of the criminal proceedings against him." *Chewning v. Rogerson*, 29 F.3d 418, 420 (8th Cir.1994) (internal quotes omitted).

[T]he test for determining whether a particular proceeding is itself a critical stage is 'whether the presence of ... counsel is necessary to preserve the defendant's basic right to a fair trial....'. *United States v. Wade*, 388 U.S. 218, 227, [87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149] (1967)). In undertaking this inquiry, a reviewing court must 'analyze whether potential substantial prejudice to the defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.' *Coleman v. Alabama*, 399 U.S. 1, 7, [90 S.Ct. 1999, 2002, 26 L.Ed.2d 387] (1970).

*Gilmore v. Armontrout*, 861 F.2d at 1070. Accordingly, certain pretrial proceedings, including arraignments, may or may not be characterized as critical stages giving rise to the right to the assistance of counsel depending on whether the "rights of the accused may be lost or sacrificed" at such proceedings. *Id.*

Chester argues potential substantial prejudice inhered at his arraignment inasmuch as he was required to make a legal argument—a request for substitute counsel—without Antrim's assistance. Had Antrim been present to assist him, Chester speculates, his request for substitute counsel might have been granted, he might have received more experienced counsel, and he might have been acquitted.

■ We are unpersuaded by Chester's speculative reasoning. For one, Chester has not cited, neither can we imagine, any rule stating that the right to request substitute counsel is "lost or sacrificed" if not asserted at a federal arraignment. To the contrary, a federal criminal defendant may request substitute counsel at virtually any time, so long as that request is not designed for the purpose of " 'delaying and disrupting the trial.' " *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.) (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1113 (8th Cir.1988)), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992). Furthermore, given Blum's rejection of Antrim's counsel and his own plea of not guilty, we question whether Antrim's presence would have helped avoid any possible prejudice. *See Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970). A request for substitute counsel is not a complex legal or procedural undertaking. Once the request is made, the court has a duty to inquire into the factual basis of the defendant's dissatisfaction. *Smith*, 923 F.2d at 1320. Here, as discussed, the magistrate judge conducted an adequate inquiry and ruled the appointment of substitute counsel was unnecessary. In our view, Antrim could have done little to affect this ruling.

■ The record suggests that even had Blum's right to counsel attached at the arraignment, he likely waived that right with respect to the arraignment. The evaluation of the question whether sixth amendment rights have been waived is a pragmatic one resting on the facts and circumstances of each individual case. *Bumgarner v. Lockhart*, 920 F.2d 510, 512 (8th Cir.1990), *cert. denied*, 501 U.S. 1254, 111 S.Ct. 2898, 115 L.Ed.2d 1062 (1991). Here, when Blum indicated that Antrim was not present and voiced complaints about Antrim, the court offered to continue the arraignment until a later date. Blum affirmatively rejected this offer and proceeded to enter his own plea of not guilty. In the circumstances, the magistrate judge's decision to proceed was not reversible error.

We also believe that even had Chester Blum's right to counsel attached at the arraignment and not been waived, he has

shown no actual prejudice which resulted from the absence of counsel. Blum refused a continuance and voluntarily entered his own plea of not guilty. The magistrate judge observed that such a plea did not compromise any of the defendant's rights and did not prejudice him in any way and therefore concluded that Blum was not denied his sixth amendment right to counsel. We agree with both the reasoning and conclusion of the magistrate judge and the cases are in accord. *See, e.g., Gilmore v. Armontrout,* 861 F.2d at 1070–71; *McConnell v. United States,* 375 F.2d at 909 (no prejudice from not guilty plea at arraignment without counsel); *Johnson v. United States,* 333 F.2d 371, 373 (10th Cir. 1964) (same); *Gueldner v. Heyd,* 311 F.Supp. 1168, 1170–71 (E.D.La.) (same), *aff'd sub nom. United States v. Heyd,* 432 F.2d 91, 93 (5th Cir.1970).

■ Citing to *United States v. Day,* 998 F.2d 622, 626–27 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2140, 128 L.Ed.2d 868 (1993), Chester Blum also asserts that his right to counsel was denied at trial because the trial court improperly offered him a "Hobson's choice" of either proceeding with Antrim, whom he now characterizes as "freshman counsel" and "unprepared," or proceeding pro se. *See Gilbert v. Lockhart,* 930 F.2d 1356, 1360 (8th Cir.1991) (Gilbert's right to counsel violated in that "he was offered the 'Hobson's choice' of proceeding to trial with unprepared counsel or no counsel at all").

A "Hobson's choice" has been defined as "something one must accept through want of any real alternative." Webster's Third International Dictionary (3d ed.1971). Given this definition, we fail to see how Chester was offered a "Hobson's choice," for Antrim's representation provided Chester a real alternative. Aside from his non-appearance at Chester's arraignment, the record reveals that Antrim adequately represented Chester. Prior to the court's acceptance of Chester's request to proceed at trial pro se, Antrim filed multiple pretrial motions on Chester's behalf. In addition, Chester made no specific complaints about Antrim's performance to the district court. In his April 22, 1994 "Motion to Have Access to Law Library,"

treated by the court as a motion to proceed pro se, Chester stated only that he felt he could "better represent himself more effectively in this cause of action." Similarly, at a May 20, 1994 hearing, when asked by the court why he wanted to proceed pro se, Chester responded, "Because I know my own case, and I feel more confident with myself than I do with Mr. Antrim." Finally, we note that Chester must have been minimally satisfied with Antrim's representation, because he requested that Antrim be retained as standby counsel. Thus, Chester's "Hobson's choice" argument is unpersuasive.

■ Next, Chester contends the district court erred by refusing to strike for cause venireman Boubek. The district court "has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice has been demonstrated." *United States v. Huddleston,* 810 F.2d 751, 753 (8th Cir.1987); *see United States v. Mills,* 987 F.2d 1311, 1314 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 403, 126 L.Ed.2d 351 (1993). Here, Chester has failed to show either that Boubek, a former police officer, would not be impartial or that he was in any way prejudiced by the court's refusal to strike Boubek for cause.

The only evidence alleged by Chester to show lack of impartiality consists of comments made by Boubek during voir dire. First, when asked whether he could view lay witnesses to be as credible as police officers, Boubek responded, "I would hope so." Second, Boubek at one point stated that he had never known a police officer to say something untrue on the witness stand. However, when asked whether he thought perjured testimony was possible, Boubek responded, "Anything is possible." Third, when asked whether he believed his past association with police officers would affect his "ability to hear the case fairly," Boubek, apparently misunderstanding the question, began discussing a physical hearing impairment. In context, all of these comments are innocuous and evidence no fatal lack of impartiality. Moreover, even if Boubek's responses somehow were construed as indicative of an inability to be impartial, Boubek was struck from the jury panel by the attorney for Dana Blum and thus was not on the panel chosen

to try the case. Blum makes no showing that the empaneled jury was not impartial. *See United States v. Ellsworth,* 738 F.2d 333, 335 (8th Cir.), *cert. denied,* 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984); *see United States v. Cruz,* 993 F.2d 164, 168–69 (8th Cir.1993). Thus, while the district court did not abuse its discretion in refusing to strike venireman Boubek for cause, the failure to strike could not be error because Boubek did not serve.

■ Finally, Chester contends the district court erred twice during the presentation of evidence. He first contends the court erred by not declaring a mistrial after an FBI agent testified that Chester refused to consent to a search of the Blums' house. He also contends the court erred by admitting into evidence the 12 gauge shotgun shells and .357 magnum cartridges seized from the Blums' house. As the government points out, however, Chester failed properly to preserve either of these alleged errors for our review. After the FBI agent testified that Chester had refused to consent to a search, Chester neither objected nor moved for a mistrial. *United States v. Nelson,* 984 F.2d 894, 898 n. 6 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); *United States v. Miller,* 974 F.2d 953, 961 (8th Cir.1992). Although Chester did challenge the ammunition's admissibility by way of an unsuccessful motion in limine, he failed to object at trial when the government offered the ammunition into evidence. *See United States v. Klein,* 13 F.3d 1182, 1184 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2722, 129 L.Ed.2d 846 (1994). We therefore review for plain error. Having carefully reviewed the record, we conclude the district court did not plainly err in handling either of these matters.[2]

## II. Dana Blum

■ Dana Blum challenges the district court's denial of her motion to sever. *See*

Fed.R.Crim.P. 14. Generally, "persons charged in the same offense should be tried together, especially when proof against them is based upon the same evidence or acts." *United States v. Voss,* 787 F.2d 393, 401 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). "We reverse a denial of a motion to sever only when the defendant shows an abuse of discretion that resulted in severe prejudice." *United States v. Crouch,* 46 F.3d 871, 875 (8th Cir.1995); *see United States v. Rimell,* 21 F.3d 281, 289 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). Severe prejudice results only when "the defendant is deprived of an appreciable chance that he would have not been convicted in a separate trial, and not merely when he would have had a better chance for acquittal in a separate trial." *United States v. O'Meara,* 895 F.2d 1216, 1219 (8th Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

Dana asserts she was severely prejudiced because the district court's refusal to sever constructively denied her constitutional right to testify at trial. She was constructively denied this right, Dana argues, because had she testified, Chester, who was proceeding pro se, "would [have been] entitled to cross-examine her armed with confidential information gained during the course of the marriage." Bringing this "confidential information" to light, she adds, would have caused a variety of problems. For example, she might have been required to testify adversely to Chester, as well as to herself. In addition, the "confidential information" elicited by Chester might have opened the door to "otherwise inadmissible and prejudicial" background evidence and created irreconcilable defenses.

Dana has not shown the district court's refusal to sever resulted in clear prejudice.

---

2. On appeal, Chester moved for leave to file a pro se supplemental brief. Generally it is Eighth Circuit policy to refuse to consider pro se filings when a party is represented by counsel. *Hoggard v. Purkett,* 29 F.3d 469, 472 (8th Cir.1994); *see also United States v. Martin,* 59 F.3d 767, 768 (8th Cir.1995). However, as in *Hoggard,* we have gratuitously examined Chester's pro se filings. In general, they set forth no material of

arguable merit not adequately dealt with by the district court or in the text of our opinion. Thus, we find that a more extensive or elaborate opinion concerning the motion and supplemental brief would have no precedential value, and we forego such extension or elaboration. without more, the supplemental brief may be treated as filed and, as indicated in the text of our opinion, the judgments of the district court are affirmed.

She has not given any indication of the substance of her testimony had she been granted a separate trial and testified. We therefore have no way of determining whether an "appreciable chance" existed "that [she] would have not been convicted in a separate trial." *O'Meara,* 895 F.2d at 1219; *see United States v. McConnell,* 903 F.2d 566, 571 (8th Cir.) (codefendant seeking severance must show that testimony adduced at separate trial would have been "substantially exculpatory"), *cert. denied,* 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1990).

Dana also suggests she was severely prejudiced because the jury was unable to compartmentalize the evidence against her and Chester. She argues that Chester's unskillful pro se representation resulted in an inordinate amount of "unfavorable testimony against him which caused the jury to find her guilty by association." A severance, however, "is not required merely because the evidence against one defendant is more damaging than the evidence against another." *United States v. Agofsky,* 20 F.3d 866, 871 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 280 (1994) (quoting *United States v. Garrett,* 961 F.2d 743, 746 (8th Cir.1992)). Dana also contends that her status as Chester's wife, as well as the presence of additional marshals in the courtroom due to Chester being a security risk "exacerbated" chance of guilt by association. We disagree. At bottom, this was not a complex case: two defendants, two counts each, and no complex issues. "In such situations, the jury 'undoubtedly is capable of properly compartmentalizing the evidence.'" *Id.* (quoting *Garrett,* 961 F.2d at 746) (affirming a refusal to sever a two-defendant, three-count indictment for bank robbery and firearm related offenses).

 Dana next assigns error in the district court's denial of her belated request to reopen the evidence. Dana chose not to testify but then after the close of the evidence sent a message from her cell to the court that she had changed her mind.

Dana contends that the district court's denial of her request violated two distinct constitutional rights: the right to testify and the right to counsel. The right to testify on one's own behalf at a criminal trial is derived from the fifth and sixth amendments. *See Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct.

2704, 97 L.Ed.2d 37 (1987). We have made clear, however, that "[a] defendant's right to testify is not unqualified." *United States v. Stewart,* 20 F.3d 911, 917 (8th Cir.1994). "It must, at times, yield to interests of order and fairness." *Id.* Accordingly, "[t]he right to testify must be exercised at the evidence-taking stage of trial." *United States v. Jones,* 880 F.2d 55, 59 (8th Cir.1989). "Once the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion." *Id.*

Dana insists the district court abused its discretion in refusing to reopen the evidence because it did not make her aware of her right to testify and did not obtain a knowing and voluntary waiver of that right. We disagree. First of all, Dana was clearly aware of her constitutional right to testify because she belatedly attempted to assert it. Second, it cannot be said that she did not knowingly and voluntarily waive the right. Dana's case-in-chief was sparse, consisting merely of several photographs introduced into evidence. After the photographs were introduced, the court asked Dana if she wished to present any additional evidence. Her lawyer responded in her presence, "No, your Honor, with the admission of this evidence, Dana Blum rests." Dana remained silent. In like circumstances, we have held that if an accused desires to exercise her constitutional right to testify the accused must act affirmatively and express to the court her desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred. *United States v. Bernloehr,* 833 F.2d 749, 752 (8th Cir.1987).

Dana also contends the district court violated her sixth amendment right to counsel when it rejected her tardy request to testify without first informing her lawyer that such a request had been made. More precisely, she asserts that the district court's failure to inform her counsel amounted to a complete denial of counsel at a critical stage of the proceedings, thus giving rise to a presumption that she was prejudiced. *See United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Hanson v. Passar,* 13 F.3d 275, 280 (8th

Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1859, 128 L.Ed.2d 482 (1994); *Smith,* 923 F.2d at 1321.

Dana's assertion is flawed. The district court never denied Dana access to her lawyer. Prior to rejecting her belated request to testify, the court simply neglected to inform Dana's lawyer that such a request had been made. Dana, herself, had sat next to her lawyer throughout the proceedings and had seen her lawyer only a short time before sending her request to the court via the marshal. She knew how to contact her lawyer and had ample opportunity to talk to her lawyer both before and after the court's refusal to reopen the case. Dana has cited no authority for the proposition that the court's action, given the circumstances, amounts to a complete denial of counsel. We decline to so hold here.

Finally, Dana contends the evidence was insufficient to support her conviction. Having carefully reviewed the record, we reject her contention.

## CONCLUSION

For the foregoing reasons, the judgments of the district court are affirmed.