STATE OF NEBRASKA, APPELLEE, V. FREDERICK WHITE, APPELLANT.
518 N.W.2d 923

Filed July 15, 1994.   No. S-92-1061.

Toney J. Redman for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

Kenneth N. Thompson, amicus curiae.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

PER CURIAM.

Defendant, Frederick White, appeals from the order of the district court denying his motion for postconviction relief. The single assignment of error is that the district court found that defendant was not denied effective assistance of counsel when he was not given the opportunity to testify at his trial. This case has been transferred to the docket of the Supreme Court under our authority to regulate the caseloads of the appellate courts. We affirm.

Defendant was charged with the August 17, 1979, felony offense of escape from official detention, a violation of Neb. Rev. Stat. § 28-912 (Reissue 1989). His first trial, to a jury, commenced March 4, 1980, and resulted in a conviction, but the conviction was set aside and defendant was granted a new

trial because of an erroneous instruction. The second trial began April 16, 1980, and again resulted in a conviction. Defendant was represented by the Lancaster County Public Defender, Dennis Keefe, at both trials. On appeal to this court, defendant having cited grounds for error other than ineffective assistance of counsel, his conviction was affirmed. See *State v. White*, 209 Neb. 218, 306 N.W.2d 906 (1981). Defendant's amended motion for postconviction relief was filed by his court-appointed attorney, Toney J. Redman, which motion alleged ineffective assistance of counsel by defendant's lawyer at the second trial.

It is beyond dispute that to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution, the defendant must show that counsel's performance was deficient and that such deficient performance prejudiced the defense. The standard for determining the propriety of the claim is whether the attorney, in representing the defendant, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions. *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993).

The bases of defendant's claim of ineffective assistance of counsel were counsel's failure to pursue the legality of defendant's arrest and to appeal the issue, failure to appeal the issue of the constitutionality of § 28-912, failure to object to or appeal the issue of improper closing statements by the prosecution, and failure to advise defendant of his right to testify in the second jury trial.

The postconviction trial court, in a well-reasoned and detailed order, denied each of defendant's specific complaints with a full explanation of each. The only complaint which defendant argues on appeal is counsel's failure to advise defendant of his right to testify. Therefore, we confine our analysis to that issue.

On August 17, 1979, an Officer Spanel of the Lincoln Police Department was investigating a series of sexual assaults in a Lincoln neighborhood. The officer was in plain clothes and in

an unmarked car. He walked up to defendant and one Julius Nivens to show them a composite sketch of the sexual assault suspect. As defendant reached out his right hand to take the sketch, the officer noted a series of distinctive scars on defendant's right forearm. Aside from the fact that the suspect was a black male, which defendant was, the suspect was reported to have scars on his left forearm.

According to Spanel, he told defendant that defendant was coming downtown with him. Spanel reached into his car to radio in to headquarters, and defendant struck him and ran. Defendant contends that the officer never identified himself and never placed defendant under arrest. Defendant was subsequently arrested and charged with escape.

The first trial commenced March 4, 1980, and the following appears of record after the close of the State's evidence:

Mr. Keefe: Mr. White and I have talked at length prior to the trial, this weekend and last week, about the fact that he does have the right to testify, and also the fact that he has the right not to testify, if he doesn't want to. My advice to him is that as a tactical maneuver that we would—that he not testify, nor do we call a witness by the name of Julius Nivens. And those are tactical considerations on my part and my advice has been to him that neither he testify nor do we call Mr. Nivens as a witness. Is that agreeable with you, Fred?

The Defendant: Yes.

The second trial commenced April 16, 1980, and the record of that trial does not disclose any similar statement made by defense counsel or defendant. Defendant was not called as a witness. It is counsel's failure to call defendant as a witness or obtain a waiver from defendant that defendant now claims was error on trial counsel's part.

Just before the beginning of the second trial, defendant, his counsel, and counsel for the State appeared before the court in response to a motion by the State to endorse an additional witness. The following exchange took place:

The Court: This is the matter of the State of Nebraska versus Fred White. Mr. McGinn, who do you wish to endorse? I don't see it here.

Mr. McGinn: I filed it more than a week ago.

The Court: Who do you wish to endorse?

Mr. McGinn: I filed it on April 9th, and it asks leave of Court to endorse Officer Stan Chalis of the Lincoln Police Department as a witness in the above-entitled case. The motion went on to say that the State showed the Court that Officer Chalis would offer testimony regarding a prior similar act of escape committed by the defendant, Fred White. It's my understanding that it is likely that intent will become an issue in this case, of course, depending on the Court's Instructions, and if it does, certainly evidence of prior similar crimes is relevant to show—

. . . .

Mr. Keefe: It was when the defendant was under charge and leaving the courtroom. Not a similar situation here. There is no intent. Mr. McGinn wants to introduce this simply to let the jury know that the defendant has been convicted of a felony. There is no theory on which this can be a prior—

. . . .

The Court: Well, I didn't anticipate this. We didn't get into it the last time. But I'm going to deny your request.

The case proceeded to trial, at which Nivens testified but defendant did not. Nothing appears of record which indicates whether defendant was to testify or whether he would waive his right to testify.

At the postconviction hearing and on appeal to this court, defendant argues simply that he was not given the opportunity to testify, that he wanted to testify, and that under *U.S. v. Teague*, 953 F.2d 1525 (11th Cir. 1992), a criminal defendant has a fundamental constitutional right to testify in his or her own behalf, which right is personal to the defendant and cannot be waived either by the trial court or by defense counsel. In the present case, counsel for defendant, in addressing the trial court before the taking of evidence in the postconviction proceedings, stated:

At the second trial, Mr. White tells me that the judge made a ruling before the trial, that evidence of that escape

could not be offered if Mr. White testified, and as a result, it was Mr. White's intention to testify at the second trial.

So, the argument would be, whatever occurred at the first trial, was irrelevant as far as advice given to Mr. White, because the facts were different, and the facts being different because the State at the second trial was no longer going to use evidence of the prior escape.

*Teague* holds that defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Teague* relies on *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in deciding the case:

In *Strickland*, the Supreme Court defined two requirements for a claim of ineffective assistance of counsel: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S.Ct. at 2064.

The first prong of this test requires that defendant show that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688, 104 S.Ct. at 2065. Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf. In other words, by not protecting the defendant's right to testify, defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the *Strickland* test. For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to

testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted " 'within the range of competence demanded of attorneys in criminal cases,' " and the defendant clearly has not received reasonably effective assistance of counsel. [Citations omitted.]

In the case at bar, the district court made specific findings after an evidentiary hearing on this issue. "We defer to the district court's findings of fact absent a clearly erroneous determination but apply our own judgment as to whether the conduct determined by these facts constitutes ineffective assistance of counsel." *Wiley v. Wainwright*, 793 F.2d 1190, 1193 (11th Cir. 1986). The district court found that "the evidence fail[ed] to show that the Defendant's will was 'overborne' by his counsel. The Defendant was advised of his right to testify, was advised that he should not exercise that right, and did not protest." Upon review of the record of the evidentiary hearing, we cannot say that these findings of fact are clearly erroneous.

Moreover, although at the time of the evidentiary hearing counsel clearly had misgivings about whether Teague had understood that he was choosing not to testify, a review of ineffective assistance of counsel claims must be made from the perspective of defense counsel, taking into account all circumstances of the case as they were known to counsel *at the time of the representation.* [Citation omitted.] Teague's counsel clearly had advised him that it would be unwise and unnecessary for him to testify. At the evidentiary hearing, counsel testified that when she rested the defense case, she believed that Teague had assented or acceded to her recommendation. We find that counsel's performance was not constitutionally deficient. Because the defendant has failed to meet the first prong of

*Strickland*, we need not address whether Teague's defense was prejudiced in this case.

*U.S. v. Teague*, 953 F.2d at 1534-35.

The factual situation at the first trial as presented here by defendant is simply not correct. The record does not disclose that defendant was advised by his trial counsel not to testify because the State was going to offer evidence of his prior escape. Defendant's trial counsel, Keefe, when questioned by defendant's postconviction counsel, Redman, was asked:

Q. So that I understand correctly, then, one of the reasons strategywise that you had in mind then, for Mr. White not to testify was because if he did, then his prior record would inevitably go before the jury; is that correct?

A. Not his prior record, but the fact that he was a prior convicted felon would have come in to affect his credibility.

According to the presentence investigation report, defendant was sentenced on December 29, 1976, to prison terms of 2 to 5 years on the escape conviction and 15 to 30 months for a burglary conviction. In his testimony, defendant admitted the two prior felony convictions. The two felony convictions quite obviously are the ones about which defendant's trial counsel was concerned.

When asked about the proceedings which occurred immediately before the commencement of the second trial, Keefe testified that "[m]y recollection of this hearing was that the prosecutor had filed a motion to endorse [an] additional witness and informed the court that that witness was going to testify to what could be termed prior similar act[s] evidence. Specifically, I believe it was a prior escape." Keefe went on to testify:

A. . . . I guess the judge ruled because of time differential, he wasn't going to allow the witness either to be endorsed or to testify about that prior escape as prior similar act evidence.

Q. [Redman] Okay. Do you know whether or not Mr. White understood the import of the judge's ruling at the time?

A. I don't know what Mr. White thought. I know that I

had talked to him earlier about how the fact that he was a prior convicted felon would be admissible as affecting his credibility. So I am comfortable he understood that. I do not specifically recall talking to Mr. White about this issue about this hearing. I don't specifically recall our conversation about that.

Keefe's testimony is summed up in the following:

I do remember obviously when we received a favorable ruling on the motion for new trial, it was based on specifically on [sic] instructions regarding arrest. I remember talking with Mr. White about our success in obtaining a new trial, the reasons for that and the fact that there would be a second trial. I know that we had conversations about how the second trial would proceed and I can't say to you now, I specifically recall "x" day this conversation took place when Mr. White specifically said, "x", "y" and "z". But I am very comfortable with the fact that Mr. White fully was aware we were proceeding with the trial the same, on the same theory. He acquiesced in that and agreed to it.

At the postconviction hearing, defendant testified regarding the first trial that "it was my understanding that if I testified, then Mr. Keefe explained to me that if I were to testify, the prosecuting attorney could come into court and say to the jury, Fred White has done this before; this, being escape." Of course, according to Keefe, no mention of the attempted use of a prior similar act was discussed until the second trial.

Defendant also testified that it was after the second trial had concluded and the defense had rested that he said to Keefe, "Hey, I thought I was going to testify and we discussed it." This was completely contrary to the earlier testimony by Keefe that he had never refused to allow a client to testify who wanted to do so.

After discussing in its order the issue of defendant's contention that he was not allowed to testify, the postconviction trial court stated:

I find that defendant agreed with his experienced counsel that defendant should not testify.

It was proper trial strategy for counsel not to call the

defendant, and the Court so finds.

THE COURT FURTHER FINDS that the defendant has failed to show that his attorney failed to perform at least as well as lawyers with ordinary training and skill in the criminal law in the area. Nor did the defendant show that he was prejudiced in the defense of his case as a result of his attorney's actions or inactions. The defendant's rights under the U.S. and Nebraska Constitutions, were neither denied nor infringed so as to render his convictions void or voidable.

It is quite apparent that the postconviction trial court determined from the record that the facts were as related by trial counsel, Keefe, and not according to the story that defendant came up with for the first time some 10 or more years after the fact. "In an appeal from a denial of a motion for postconviction relief, the lower court's findings will be upheld unless clearly erroneous. *State v. Sanders*, 241 Neb. 687, 490 N.W.2d 211 (1992)." *State v. Victor*, 242 Neb. 306, 309, 494 N.W.2d 565, 568 (1993).

The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.