STATE OF NEBRASKA, APPELLEE, V.
CLIFFORD J. DAVLIN, APPELLANT.

658 N.W.2d 1

Filed March 7, 2003.   No. S-00-698.

Peter K. Blakeslee, and, on brief, James R. Mowbray and Nancy K. Peterson, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, J. Kirk Brown, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## I. NATURE OF CASE

Clifford J. Davlin was convicted of first degree sexual assault on a child and use of a weapon to commit a felony. He was subsequently determined to be a habitual criminal and sentenced to a total of 25 to 35 years' imprisonment. Davlin's convictions and sentences were affirmed by memorandum opinion on direct appeal. See *State v. Davlin*, 3 Neb. App. xiii (No. A-94-505, Feb. 28, 1995).

Thereafter, Davlin filed a motion for postconviction relief, which the district court denied, and he appealed. The Nebraska Court of Appeals reversed the judgment and remanded the cause for a new trial, concluding that Davlin's due process rights were violated by the trial court's refusal to inquire into his dissatisfaction with court-appointed counsel. See *State v. Davlin*, 10 Neb. App. 866, 639 N.W.2d 168 (2002). We granted the State's petition for further review.

## II. SCOPE OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. See *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002).

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. See, *id.*; *State v. White*, 246 Neb. 346, 518 N.W.2d 923 (1994).

## III. FACTS

On November 20, 1993, 15-year-old M.D. left her home in Aurora, Nebraska, and hitchhiked to a truckstop near Lincoln. She took a taxi into Lincoln and eventually found herself walking down O Street as it was beginning to get dark. When a couple of males began chasing M.D. on O Street, Davlin pulled up in his car and asked M.D. if she needed a ride. M.D. told Davlin she was on her way to Omaha, and Davlin responded that he would take her there that night.

After M.D. got into Davlin's car, the two went to a Lincoln bar where Davlin bought alcoholic drinks for M.D. and himself. Davlin suggested to M.D. that she stay overnight at his apartment and that they would travel to Omaha the next morning. M.D. agreed, and the parties proceeded to Davlin's apartment, where M.D. showered and lay down to sleep on the couch. Three times during the night, Davlin stood naked in front of M.D., but she pretended to be asleep.

The next morning, Davlin and M.D. set out for Omaha. M.D. testified that they traveled on a highway and that they passed a sign for Syracuse and Nebraska City before turning off the highway onto a gravel road. Davlin stopped his car near an abandoned house and made an advance on M.D. She attempted to get out of the car, but Davlin wielded a knife, commanded M.D. to

get back into the car, and threatened to kill her if she got out. Davlin forced her to perform various sex acts, including fellatio and vaginal intercourse. He then drove M.D. to Bellevue and let her out of the car.

M.D. went to the nearest store and reported what had happened. A police officer arrived, and M.D. was taken to the hospital. The treating physician gave her a complete physical examination and took several samples for a sexual assault kit. M.D. reported pain in her lower abdomen, which the treating physician testified was consistent with aggressive sexual intercourse. M.D. then led a Sarpy County investigator to the site of the sexual assault and to Davlin's Lincoln apartment. A search warrant was obtained for Davlin's car and apartment. M.D. identified Davlin as being her assailant.

Davlin admitted to an investigating officer that he met M.D. on November 20, 1993, and took her to a bar and his apartment. He claimed that he drove M.D. to a truckstop west of Lincoln later that night. He denied having sexually assaulted M.D. He admitted keeping a knife in his car.

Davlin was charged with first degree sexual assault on a child and use of a weapon to commit a felony. The Sarpy County public defender was appointed to represent Davlin, and Davlin pled not guilty. On March 11, 1994, 3 days before trial, the trial court received a letter from Davlin, complaining about his representation by the public defender.

During a hearing on the State's motion to endorse witnesses, the trial court stated that it had received Davlin's four-page letter but that the court had not read the letter in its entirety and did not want to get into the content of the letter. Davlin was told that if the court discharged the public defender, another lawyer would not be appointed. Davlin chose to proceed to trial with the public defender as his counsel.

On March 15, 1994, a jury found Davlin guilty of first degree sexual assault on a child and use of a weapon to commit a felony. After an evidentiary hearing, the trial court found Davlin to be a habitual criminal, and he was sentenced to 25 to 35 years' imprisonment.

On direct appeal, Davlin was represented by an assistant public defender for Sarpy County. The Court of Appeals affirmed

the trial court's judgment by memorandum opinion. See *State v. Davlin*, 3 Neb. App. xiii (No. A-94-505, Feb. 28, 1995).

When Davlin filed his motion for postconviction relief, he was represented by attorneys from the Nebraska Commission on Public Advocacy. His operative motion alleged, inter alia, that the trial court (1) denied his right to due process of law and to effective assistance of counsel by denying his pretrial request for substitution of counsel and (2) denied his right to effective assistance of counsel at trial and on direct appeal.

In addition to the letter Davlin sent to the trial court, he testified by deposition that counsel had not met with him more than three times before trial. Although Davlin spoke with counsel via telephone on numerous occasions, counsel did not reply to letters from Davlin. After Davlin received certain laboratory reports, he asked for independent DNA testing. He claimed that counsel responded to his request with vulgar language, stating that counsel was not going to spend $40,000 to prove Davlin's innocence.

Additionally, Davlin testified that he had asked the public defender to investigate the odometer reading on his car because he had recently purchased the car and believed that the odometer reading would have shown that he could not have driven the route which was alleged. He also asked counsel to have the car inspected for semen which was claimed to have been deposited in the car in relation to the sexual assault.

The State presented no evidence at the hearing on Davlin's motion for postconviction relief.

The district court found that the public defender's failure to act on Davlin's requests fell below the minimum standard and that counsel's response to Davlin's request for independent DNA testing lacked the civility that even the most difficult client should expect. However, the court concluded that Davlin had "failed to establish grounds for relief under the Strickland prongs." Having separately concluded that Davlin's complaints of ineffective assistance of counsel during trial and appeal were without merit, the district court denied the motion. Davlin timely appealed.

On appeal, Davlin made the following assignments of error: (1) He was denied effective assistance of counsel and due process in the trial court's disposition of his request for substitute counsel and (2) he was denied effective assistance of counsel at trial and

on direct appeal. He argued that the trial court's failure to inquire into the factual basis of his dissatisfaction with the public defender denied him the right to effective assistance of counsel. He claimed this failure violated his 6th Amendment right to effective representation and his right to due process of law under the 14th Amendment.

The Court of Appeals concluded that the failure of the trial court to inquire into Davlin's dissatisfaction with counsel was a denial of due process which required a new trial. It did not address Davlin's claims that his trial and appellate counsel were ineffective.

## IV. ASSIGNMENTS OF ERROR

In its petition for further review, the State asserts that the Court of Appeals (1) erroneously announced a rule, previously unknown to Nebraska law, that the failure of a trial court to hold a hearing into a pro se defendant's ex parte complaints about appointed counsel represents a per se violation of the Due Process Clause and (2) erroneously concluded that the question of whether Davlin suffered any prejudice as a result of the relationship between appointed counsel and Davlin was irrelevant to an analysis of the question.

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

[3] We begin our analysis by addressing Davlin's claim that he was denied effective assistance of counsel at trial and on direct appeal. The Supreme Court, upon granting further review which results in the reversal of a decision of the Court of Appeals, may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

Because Davlin was represented by the public defender's office at trial and on direct appeal, he is not procedurally barred from asserting a claim of ineffective assistance of counsel in his motion for postconviction relief. See *State v. Billups*, 263 Neb. 511, 641 N.W.2d 71 (2002). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must

show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002). In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. George*, 264 Neb. 26, 645 N.W.2d 777 (2002).

Davlin argues generally that he was denied effective assistance of counsel by his trial counsel's failure to subject the prosecution's case to meaningful adversarial testing. In *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the U.S. Supreme Court explained that where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." The Court also noted:

> The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. [Citations omitted.]
>
> Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt. [Citations omitted.]

*United States v. Cronic*, 466 U.S. at 659 n.25, 26.

We conclude that the record does not support a claim that Davlin's counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, and therefore, prejudice will not be presumed.

We next proceed to analyze Davlin's ineffective assistance of counsel claims under the two prongs of *Strickland*. A defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. See *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002). Appellate review of a claim of ineffectiveness assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the

lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independent of the lower court's decision. See, *id.*; *State v. White*, 246 Neb. 346, 518 N.W.2d 923 (1994).

### (a) Failure to Investigate

Davlin claims that his requests for further investigation were not acted upon by trial counsel and that counsel's failure to respond to these requests amounted to ineffective assistance. Davlin alleges that he asked both trial counsel and appellate counsel to retain an expert to screen his car in an effort to detect the presence of bodily fluids that would be evidence of a sexual encounter in the car. Davlin also alleges he requested that counsel investigate the odometer reading of his car to establish that it could not have been driven to Omaha based on the odometer reading of the car when it was purchased compared to when it was seized.

The district court found that Davlin's requests to have his car's odometer checked and to have his car screened for bodily fluids were met with refusals, silence, or inaction. The court also found that "Davlin's requests were reasonable and, absent some evidence showing a reasonable basis for refusing them, should have been followed. [Counsel's] failure to do so falls below the minimum standards expected, and his responses lack the civility even a most difficult client should expect from his counsel." The court pointed out, however, that it was Davlin's burden to show what the requested actions would have disclosed, and the court concluded Davlin failed to do so.

In his deposition testimony, Davlin claimed that an inspection of the odometer in his vehicle would have disclosed that relative to the incident in question, he could not have driven to the crime scene and back to his home based on the number of miles on the car when it was purchased and the number of miles on the car when it was seized. However, Davlin did not produce evidence of the mileage at the time the vehicle was purchased, at the time of its impoundment by police, or at any time relevant to the

occurrence. In the absence of any facts to support his claim regarding the significance of the mileage on the odometer, Davlin has not shown how or why counsel's refusal to check the odometer was prejudicial to his defense.

Davlin asserts that if the requests had been acted upon, the result of the trial would have been different. The district court found that Davlin's assertion was unfounded and that he failed to meet his burden of showing that but for counsel's deficient performance, the result of the proceeding would have been different. We conclude that the district court did not err in this determination.

### (b) Failure to Object

Davlin alleges that his appointed counsel repeatedly failed to make appropriate objections to damaging information elicited from M.D. Specifically, Davlin asserts that counsel should have objected to testimony relating to his procuring alcohol for a minor.

The district court explained that this testimony came from M.D. and could be considered necessary to explain her contact with Davlin in the period preceding the sexual assault. The court found that the testimony was relevant to M.D.'s identification of Davlin and that any unfair prejudice to him was remote. The court concluded that Davlin failed to meet either prong of his burden under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We agree with the district court's conclusion.

### (c) Failure to Question Expert on Cross-Examination

Davlin alleges trial counsel failed to properly question the State's expert forensic serologist on cross-examination. He asserts that counsel failed to question whether the findings of the microscopic examination of hair samples can be used to identify or exclude a suspect and that counsel failed to question the expert about alternative testing methods.

■ In his operative motion for postconviction relief, Davlin argued that trial counsel failed to object to the expert forensic serologist's testimony; however, he did not argue that counsel failed to question the expert on cross-examination. When an issue is raised for the first time in an appellate court, it will be

disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). This issue was not presented to the district court, and therefore, we do not consider it.

(d) Failure to Obtain Independent Testing

Davlin alleges he requested that trial counsel obtain independent DNA testing of certain evidence. He claims counsel responded profanely and unprofessionally that independent testing was too costly. Davlin alleges that independent DNA testing was available at an affordable cost and that it was reasonable under the circumstances to pursue such testing. Davlin asserts that his counsel's failure to obtain independent DNA testing was unjustified and deficient.

The district court analyzed this issue together with Davlin's allegation of a failure to investigate. The court found that counsel's failure to appropriately respond to Davlin's request fell below the minimum standards expected. However, the court concluded that Davlin failed to meet his burden of showing what the independent testing would have disclosed. The court noted that the evidence samples had subsequently been destroyed but that there was no contention that such destruction was erroneous or wrongful in any manner. Thus, any issue relating to destruction of the evidence was not presented to the district court.

In his operative motion for postconviction relief, Davlin claimed that had independent DNA testing been conducted, he would have been able to show the jury that he was excluded as the donor of the semen collected from M.D. This conclusion cannot be supported by any facts because the DNA was destroyed. Davlin offered the deposition testimony of a deputy laboratory director employed by Cellmark Diagnostics in Maryland regarding the general nature of DNA testing being performed in late 1993 and early 1994. There was no evidence of what DNA testing would have revealed in this case. On appeal, Davlin now asserts that he was prejudiced because destruction of the evidence violated his due process rights. The destruction of the evidence was not an issue presented to the district court in Davlin's motion, and therefore, we do not consider it. The court

did not err in deciding the issue presented to it and in concluding that Davlin had failed to meet his burden of showing what independent testing would have disclosed.

### (e) Jury Instruction No. 3

Davlin alleges his trial counsel's failure to object to jury instruction No. 3 and his appellate counsel's failure to raise the issue on appeal constitute ineffective assistance of counsel. Instruction No. 3 advised the jury of the material elements of first degree sexual assault. Instruction No. 3 stated that the State was required to prove that "[t]he defendant was 19 years of age or older and [M.D.] was *16 years of age or younger.*" (Emphasis supplied.)

Davlin was charged under Neb. Rev. Stat. § 28-319(1)(c) (Cum. Supp. 1994), which prohibited sexual penetration when "the actor [was] nineteen years of age or older and the victim [was] *less than sixteen years of age.*" (Emphasis supplied.) Davlin argues that the ages of the defendant and the victim are material elements in a first degree sexual assault case and that his counsel should have objected to the trial court's erroneous instruction. Davlin claims that because the error related to a material element of the crime, he does not have to prove prejudice. We disagree.

Davlin must show that there was a reasonable probability that but for counsel's alleged deficient performance, the result of the proceeding would have been different. See, *State v. Long,* 264 Neb. 85, 645 N.W.2d 553 (2002); *State v. George,* 264 Neb. 26, 645 N.W.2d 777 (2002).

Davlin argues that the instruction may well have confused the jury in light of M.D.'s testimony that she was 16 years old. Davlin claims that M.D. was never asked at trial how old she was at the time of the alleged sexual assault and that instruction No. 3 did little to clarify for the jury that the State had to prove she was less than 16 on the date of the alleged crime.

The district court did not err in concluding that Davlin failed to meet his burden of showing that his counsels' failure to object to instruction No. 3 and raise the issue on appeal prejudiced the outcome of this case. During trial, M.D. not only gave her birth date, which would establish that she was 15 years old at the time

of the assault, but she also testified that she told Davlin she was 15 years old.

We conclude that Davlin has failed to sustain his burden that he was denied effective assistance of counsel at trial or on direct appeal as required by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

## 2. REQUEST FOR SUBSTITUTE COUNSEL

We next proceed to address Davlin's request for substitute counsel. Davlin assigned as error on appeal to the Court of Appeals that the trial court's failure to make an inquiry into his dissatisfaction with counsel and subsequent failure to appoint substitute counsel (1) violated his 6th Amendment right to effective representation and (2) violated his right to due process of law under the 14th Amendment.

The Court of Appeals concluded that the failure of the trial court to inquire as to the basis for Davlin's dissatisfaction when he moved for substitution of counsel denied Davlin his right to due process and required that Davlin's convictions and sentences be set aside and a new trial ordered.

As noted above, Davlin wrote a letter to the trial court shortly before trial. Davlin's letter contained allegations that his appointed counsel had failed to take actions that he had requested, including a request for further testing of bodily fluids and a request for DNA testing, as well as complaints regarding counsel's attitude and his refusal to answer Davlin's correspondence. From the letter, the court concluded that Davlin was writing to express dissatisfaction with his counsel and to communicate a desire to have such representation terminated.

The trial court informed Davlin that whether he had been afforded meaningful representation was an issue that could not be decided in advance. Thus, the court did not conduct a formal inquiry into Davlin's dissatisfaction with appointed counsel.

Following the hearing on Davlin's motion for postconviction relief, the district court found that Davlin's pretrial requests to have his car's odometer checked, independent DNA testing conducted, and fluid screening done on evidence samples from his car were met with refusals, silence, or inaction. The court found that "Davlin's requests were reasonable and, absent some

evidence showing a reasonable basis for refusing them, should have been followed. [Counsel's] failure to do so falls below the minimum standards expected, and his responses lack the civility even a most difficult client should expect from his counsel."

It appears that the district court analyzed Davlin's complaints about counsel as part of the ineffective assistance of trial counsel and concluded that counsel's performance was deficient. It did not address whether the trial court erred in not having a hearing on Davlin's motion for substitution of counsel.

When the district court addressed Davlin's claim that the trial court erred in denying his pro se request to replace the public defender with another court-appointed counsel, it found that Davlin's reasons for wanting counsel replaced were all premised on actions by counsel with which Davlin disagreed or conversations between Davlin and counsel. The court concluded that Davlin had failed to establish grounds for relief under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> Whether this case calls for a "presumption of prejudice" under United States v. Cronic, *supra*, and State v. Trotter, *supra*, — more particularly whether there has been a failure to subject the prosecution's case to a meaningful adversarial testing, or where the surrounding circumstances justify a presumption without inquiring into counsel's actual performance at trial — is a close call, but one I make in favor of the State. This conclusion, however, has no precedential value and should not be construed in any fashion as an approval of trial counsel's conduct.

The Court of Appeals interpreted the district court's order as a finding that the first prong of *Strickland* had been met with respect to trial counsel's performance at the time Davlin moved to dismiss counsel. The Court of Appeals held that the trial court's failure to inquire as to the basis for Davlin's dissatisfaction with appointed counsel deprived him of his right to counsel and denied him due process.

The Court of Appeals relied upon *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991), for the following propositions:

> When a defendant raises a seemingly substantial complaint about counsel, the judge "has an obligation to inquire

thoroughly into the factual basis of defendant's dissatisfaction." [Citations omitted.] The trial court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern. [Citation omitted.] That inquiry should be on the record.

The Court of Appeals concluded that a showing of prejudice was not required in analyzing the failure of the trial court to adequately inquire into Davlin's dissatisfaction with counsel. It determined that neither *Lockhart* nor any of the other cases to which it had referred discussed the prejudice requirement, and it concluded that the cases did not discuss the prejudice requirement because the failure of a trial court to inquire is a denial of due process. The court stated:

We conclude this is because the failure to inquire into a defendant's dissatisfaction with counsel is a denial by a court of the effective assistance of counsel, that is, a denial by a court of due process.

. . . When a defendant is deprived of a pretrial opportunity to disclose any such shortcoming to the court, that defendant is being deprived of due process.

*State v. Davlin*, 10 Neb. App. 866, 885, 639 N.W.2d 168, 183 (2002).

It was this failure to inquire into Davlin's complaints concerning trial counsel that was the basis of the Court of Appeals' conclusion that Davlin was denied due process and therefore entitled to a new trial.

The court in *Lockhart* determined that Smith had been denied counsel at a critical stage of the proceeding and, therefore, that prejudice was presumed. *Lockhart* held that when a complete denial of counsel at a critical stage is shown, there is often no need to show prejudice and the resulting trial is presumed to be unfair. Because the appellate court found that Smith had been completely denied counsel at a critical stage of the proceeding, prejudice was presumed and the court ordered a new trial.

■ We agree with the principle in *Lockhart* cited by the Court of Appeals. Once a defendant asking for substitute counsel has raised a seemingly substantial complaint about counsel, the court has a duty to thoroughly inquire into the complaint. However, we disagree with the Court of Appeals' analysis of the consequences

if the trial court fails to make such an inquiry. We conclude that the failure to make such an inquiry must be considered under the Sixth Amendment and not as a denial of due process.

Recently, in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), the U.S. Supreme Court was presented with the issue of what a defendant must show in order to demonstrate a Sixth Amendment violation when the trial court failed to inquire into a potential conflict of interest between the defendant and counsel about which the court knew or reasonably should have known. The Court stated:

> The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defence." This right has been accorded, we have said, "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate, see *Strickland v. Washington*, 466 U.S. 668, 685-686 (1984); and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation. As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694.
>
> There is an exception to this general rule. We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. See *Cronic, supra*, at 658-659; see also *Geders v. United States*, 425 U.S. 80, 91 (1976); *Gideon v. Wainwright*, 372 U.S. 335, 344-345 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. *Cronic, supra*, at 659, n. 26.

*Mickens v. Taylor*, 535 U.S. at 166.

In *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the Court listed the exceptions to the general rule that a defendant must demonstrate a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. The exceptions apply only when the surrounding circumstances justify the presumption of ineffectiveness. See *McGurk v. Stenberg*, 163 F.3d 470 (8th Cir. 1998).

These exceptions were set forth in *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000), where we stated that prejudice will be presumed: (1) where the accused is completely denied counsel at a critical stage of the proceedings, (2) where counsel fails to subject the prosecution's case to meaningful adversarial testing, and (3) where the surrounding circumstances may justify the presumption of ineffectiveness without inquiry into counsel's actual performance at trial. Prejudice will also be presumed where there is an actual conflict of interest among multiple defendants jointly represented by the same counsel. See, *United States v. Cronic, supra*; *State v. Trotter, supra*.

In *Trotter*, we stated: "[T]his court has recognized in prior cases that under certain circumstances, the nature of counsel's deficient conduct in the context of the prior proceedings can lead to a presumption of prejudice, negating the defendant's need to offer evidence of actual prejudice in a postconviction case." 259 Neb. at 220, 609 N.W.2d at 39. Due to the instruction in *Cronic* that "prejudice may be presumed 'only when surrounding circumstances justify a presumption of ineffectiveness[,]' . . . courts have been appropriately cautious in presuming prejudice." *McGurk v. Stenberg*, 163 F.3d at 473 (quoting *United States v. Cronic, supra*).

The circumstances surrounding Davlin's complaints do not justify a presumption of prejudice. Prejudice is presumed where the accused is completely denied counsel at a critical stage of the proceedings. *United States v. Cronic, supra*. That circumstance is not present here. Davlin was represented by counsel at all stages of the proceedings. Therefore, the presumption of prejudice is not to be applied.

Prejudice is also presumed where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.

*Id.* As we have stated above, the record does not establish that counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. Therefore, prejudice cannot be presumed on that basis.

The third instance under which prejudice is presumed is where the surrounding circumstances may justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial. See *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). In *Powell*, the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into the actual performance at trial. We conclude that such circumstance is not presented here, nor are we presented with a circumstance where counsel was representing multiple defendants and therefore had a conflict of interest.

We conclude that the circumstances surrounding Davlin's complaints do not justify a presumption of prejudice. Since prejudice is not presumed, Davlin must show that but for counsel's deficiencies, there is a reasonable probability that the result of the proceeding would have been different.

In *U.S. v. Zillges*, 978 F.2d 369 (7th Cir. 1992), the court analyzed similar facts. The defendant sent the trial court a letter elaborating a number of objections to his retained counsel and requesting new counsel be appointed. The defendant asserted that his counsel had not spent enough time preparing the case, had declined to interview his witnesses, and had refused to meet with an investigator the defendant had hired. The trial court failed to respond to the letter until the opening of trial, which was over a month after the court had received the letter.

Following a trial and conviction, the defendant claimed on appeal that the trial court's failure to conduct a proper inquiry into his request for new counsel was reversible error. Although *Zillges* addressed the issue on the basis of whether an abuse of discretion required automatic reversal, the analysis is helpful. The appellate court concluded:

> The denial of a motion for substitution of counsel will be upheld, despite an abuse of discretion, if the district court's error was harmless. . . . Under *Strickland v. Washington* . . . an error is harmless if it does not result in

a violation of a defendant's Sixth Amendment right to effective assistance of counsel. Thus, if a defendant is still afforded effective representation, an erroneous denial of a substitution motion is not prejudicial. By analogy, a district court's failure to conduct a sufficient inquiry into a substitution motion does not constitute reversible error unless it resulted in a denial of this Sixth Amendment right. Accordingly, in order to establish prejudice, [the defendant] must demonstrate that the performance of his attorney was not "within the range of competence demanded of attorneys in criminal cases" . . . and that "but for" counsel's deficiencies, "the result of the proceeding would have been different."

(Citations omitted.) *U.S. v. Zillges*, 978 F.2d at 372-73.

Davlin's assignment of error with regard to the trial court's failure to inquire about his dissatisfaction with trial counsel is without merit.

## VI. CONCLUSION

The district court properly considered Davlin's claims concerning ineffective assistance of counsel and correctly concluded that Davlin had not met the burden of proof required by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Having found no error by the district court, we reverse the decision of the Court of Appeals and remand the cause thereto with directions to affirm the judgment of the district court that denied Davlin's motion for postconviction relief.

REVERSED AND REMANDED WITH DIRECTIONS.